UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION
www.flnb.uscourts.gov

In re:                                              Chapter 11

MIRACLE HILL NURSING AND
REHABILITATION CENTER, INC.,        Case No. 23-40398

    Debtor.
_____/

### DEBTOR'S CHAPTER 11 CASE MANAGEMENT SUMMARY

MIRACLE HILL NURSING AND REHABILITATION CENTER, INC. ("**Debtor**" or "**Miracle Hill**"), pursuant to Local Rule 2081-1 and the Administrative Order 05-001 Establishing Initial Procedures in Chapter 11 Cases, files its Chapter 11 Case Management Summary (the "**Summary**"). For the Summary, the Debtor states the following:

**I.**     **Description of Debtor's Business**

The Debtor is a non-profit, skilled nursing facility (the "**Facility**"), which is sponsored by the Florida State Primitive Baptist Convention (the "**Florida State Convention**"). The Debtor provides 24-hour skilled nursing care to individuals in Leon County and the Big Bend community who are disabled, aged and in need of skilled nursing services. Since December 6, 2022, the Debtor has been managed by Innovative Health Care Management Services, Inc. ("**Innovative Health**"), which

has a proven track record of excellence in management, high regulatory compliance, exceptional quality of care and a proven ability to navigate skilled nursing facilities through difficult times.

The Facility was established in 1968. The Facility has 120 beds and is currently staffed by approximately 125 dedicated employees. The Facility was formed to serve as a refuge for African Americans who could not be admitted to other nursing homes at the time. Today, the Facility services every ethnicity, providing care to those who are in need regardless of race, creed, color, national origin or disability. The Debtor is committed to providing safe and quality services to its residents, while providing an atmosphere that fosters dignity and self-respect. It is the desire of the Facility to meet the spiritual, emotional, and physical needs of those we serve.

Founded on "Good Samaritan" principles, the Debtor offers careful supervision of the individuals entrusted to its care. Residents are provided quality care through a highly skilled team of qualified professionals. This team is led by a Facility Administrator, Medical Director and the Director of Nursing. Registered Nurses, Licensed Practical Nurses and Certified Nursing Assistants are at the Facility 24 hours per day to attend to the individual resident's needs. Social services, activities, dietary, environmental services, maintenance, physical therapy,

occupational therapy, and speech therapy are also provided to supplement care requirements.

## II. Location of Debtor's Operations and Whether Leased or Owned

The Debtor is located at 1329 Abraham Street, in Tallahassee, Florida and the Debtor owns the Facility.

## III. Reasons for Filing Chapter 11

The Debtor's problems began with the COVID 19 pandemic, which caused the Facility to lose not only its resident population but created employee retention issues. A number of the residents passed away, and many of the employees stopped working in the nursing home sector due to concerns regarding the pandemic.

The census of the 120-bed Facility dropped to around 53 residents. The decline in census was similar to reduced admissions experienced by other facilities throughout the State of Florida, due in part to restrictions to admitting new residents. The census decline resulted in losses for the Facility. According to the audited financials for the years ended 2020 and 2021, the Facility had losses of $674,105 and $1,079,385 respectively.

Even with the funds received under the Paycheck Protection Program loan program, the Facility continued to experience significant operating losses. In addition to the lower revenues due to declining census, the Facility encountered significant increases in its labor costs. Organizations such as hospitals were able to

pay extremely high wages with the help of various governmental assistance programs. These organizations recruited critical workers, including Certified Nursing Assistants and nurses, to work high paying traveling jobs. During this time, it was customary for a nurse, to make $10,000 per week, have their housing paid for in the city they traveled to, and receive a stipend for food, thus receiving an entire yearly salary in about two months. The Facility found it extremely difficult to recruit and maintain staff at the Facility. The Debtor, as did other facilities in this state, had to resort to using a nurse staffing agency to obtain people to staff the Facility. This resulted in the Debtor paying at least double the regular hourly rate it had historically paid for Certified Nursing Assistants and nurses. Although the Facility did receive governmental assistance through programs like the PPP loan process, the funds received under such programs were not enough to keep the losses from occurring.

Even though the State of Florida relaxed standards for obtaining additional staffing through the Patient Care Attendant Program ("**PCA**"), the Debtor's prior management team was not savvy enough to effectively manage the program. The prior management team could not find instructors to teach the PCA program, which would have prepared noncertified individuals to become Certified Nursing Assistants, nor did they have enough existing staff to transition to work under the program.

4

The current need to file for bankruptcy is due to the inability to pay the debts generated by the prior management. The Facility is able to pay the obligations that are required to take care of the residents such as salaries, food, pharmaceuticals, medical supplies, maintenance and equipment.

The historical financial problems were caused by poor management. Previous management was unable to navigate the complicated nursing home business through trying times. Instead of employing an experienced management team, the Facility was run by a Nursing Home Administrator without any support mechanisms. With one small exception, the Facility did not enter any contracts with insurance companies, which limited the revenue sources to the Medicaid Program and the Medicare Program.  There was a contract with Capital Health Plan, which is a local insurance specifically designed for Tallahassee or the Big Bend Area.  Without diverse revenue sources, prior management could not generate increases in revenues.

During the time of distress and the prior board's inability to stem operating losses, certain members of the prior board decided to try to sell the Facility.  The former President of the Board, Willie Williams, and Roland Gaines began to pursue the sale of the Facility without seeking the involvement of the entire board of directors. The two individuals took trips meeting with prospective buyers, negotiated a deal, and signed purchase and sale documents which were tied to a loan, all without

5

the authority of the entire board of directors and violating several rules of the Debtor's articles of incorporation and bylaws.

One rule is that the Facility could not be sold to a for profit entity, as the organization had to remain non-profit. In addition, the Facility could not be sold without HUD's written approval of such sale. Mr. Williams or Mr. Gaines did not attempt to deal with either of these restrictions in pursuing a sale.

When the entire Board of Directors became aware of the proposed sale, the sitting board, who were not in agreement with this action, immediately sought to retain parties who could effectively manage the Facility. The board contacted Dr. DeWayne Harvey, an owner operator of skilled nursing homes and the owner of a management company which specialized in operating facilities of this nature. Dr. Harvey initially agreed to assist the board with the pending issues and Innovative Health was retained to manage the Facility. Due to cash flow issues, the Debtor was not able to pay Innovative Health for the first three months it managed the Facility.

The board initially sent cease-and-desist letters, which were ignored by Dr. Williams. Their actions prompted the board to file a motion for injunction to stop the sale of the Facility, which remains pending.

Following the hearing, there was a called meeting of the Florida State Convention and the members voted to elect Dr. Chris Burney as the Debtor's new President. On that day, the associations of the Florida State Convention presented

their individuals to represent them on the Board. At the Board meeting for the Debtor on December 6th, the Debtor accepted the slate of members and appointed Innovative Health as the management company for the Facility.

Finally, the Facility has a couple of lawsuits related to debts incurred by prior management. These lawsuits threatened the Debtor's ability to operate.

The Debtor filed its bankruptcy case in order to preserve the going concern value of its assets and to restructure its obligations.

## IV. List of Officers and Directors Including Salaries and Benefits at the Time of Filing and During 1 Year Prior to Filing

The Debtor's officers and directors are: (a) Dr. Elder Chris A. Burney, President; (b) Elder Michael T. Israel, Secretary; (c) Elder Ernest Williams, Director; (d) Dr. Elder Terry Price, Director; (e) Dr. Elder James H. Chester, Director; (f) Elder Rodney Osborne, Director; (g) Elder Frederick Smith, Director; and (h) Elder Alvin Ford, Director.

None of the officers or directors receive any compensation.

## V. Debtor' Annual Gross Revenues

The Debtor's gross revenues for the fiscal year ending June 30, 2023, were $6,911,328.35. The Debtor's gross revenues from July 1, 2023 through September 30, 2023 were $2,212,044.76.

## VI. Amounts Owed to Various Classes of Creditors

Priority Creditors: The Debtor owes State of Florida, Agency for Health Care Administration approximately $800,000 for bed taxes, which may be entitled to priority status.

Secured Creditors: Four creditors have filed mortgages and/or financing statements. Due to issues caused by prior management, the Debtor has had problems accessing loan documents and/or receiving information regarding current loan balances. Key Bank, which services a HUD loan, has a first mortgage against the property. The initial amount owed to Key Bank was $5,807,700.00. 1329 Abraham has filed a mortgage and a financing statement, although the debt to 1329 Abraham is disputed. The initial amount that 1329 Abraham asserted it was owed was $600,000. Synovus Bank has filed a financing statement. In the last billing statement received by the Debtor, Synovus has asserted it was owed $44,468.98. The United States Small Business Administration filed a financing statement. The Debtor is uncertain as to the amount owed to the Small Business Administration.

Unsecured Creditors: The Debtor owes approximately $4,000,000 in unsecured claims.

## VII. General Description and Approximate Value of Debtor' Current Fixed Assets

The Debtor's assets consist primarily of real property, land improvements and the building and building improvements having an estimated total value of $7.3

4883-5856-8833, v. 4

million; accounts receivable of approximately $1.6 million; cash in the approximate amount of $700,000, equipment and furniture having an estimated value of $1.3 million, and vehicles having an estimated value of $45,000.00.

At the time Innovative Health took over the management of the Facility, the Debtor's books and records were in terrible shape. The prior management company had failed to post a number of entries and entered overrides in the Facility's computer system which prevent modifications of certain financial records. As a result, the Debtor's records may contain some inaccuracies. The Debtor reserves all rights, claims, defenses, objections, and remedies with respect to the value of the assets.

## VIII. Number of Employees and Amounts of Wages Owed as of Petition Date

As of the Petition Date, 128 people were employed by the Debtor. The Debtor will file a motion seeking authorization to pay the prepetition payroll for the period of October 1, 2023, through the Petition Date. The amount of pre-petition wages is approximately $168,500.

## IX. Status of Debtor' Payroll and Sales Tax Obligations

As of the Petition Date, the Debtor was current on its prepetition payroll and sales tax obligations.

## X. Anticipated Emergency Relief to be Requested Within 14 Days of Petition Date

The Debtor intends to seek emergent/expedited relief on the following issues:

1. Motion to pay prepetition wages;

2. Motion to assume management agreement; and

3. Motion to maintain prepetition bank accounts.

XI. **Debtor' Strategic Objectives**.

The Debtor filed the instant case to utilize the bankruptcy filing to restructure its debts.

WHEREFORE, the Debtor respectfully submits the foregoing as its Case Management Summary.

            */s/ Scott A. Stichter*
            Scott A. Stichter (FBN 710679)
            Stichter, Riedel, Blain & Postler, P.A.
            110 East Madison Street, Suite 200
            Tampa, FL 33602
            Telephone: (813) 229-0144
            Email: sstichter@srbp.com
            Attorneys for Debtor

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that true and correct copies of the foregoing *Case Management Summary* has been furnished on this 17th day of October, 2023, by the Court's CM/ECF electronic mail system to all parties receiving CM/ECF electronic noticing as set forth below:

Jodi Daniel Dubose on behalf of Debtor Miracle Hill Nursing and Rehabilitation Center, Inc. jdubose@srbp.com, jdubose.ecf@srbp.com

10

Jodi Daniel Dubose on behalf of Defendant Miracle Hill Nursing and Rehabilitation Center, Inc. jdubose@srbp.com, jdubose.ecf@srbp.com

Conor McLaughlin on behalf of U.S. Trustee United States Trustee conor.mclaughlin@usdoj.gov

Alexis Sophia Read on behalf of Creditor 1329 Abraham Street Holdings LLC asr@alexisreadlaw.com

Alexis Sophia Read on behalf of Plaintiff 1329 Abraham Street Holdings, LLC asr@alexisreadlaw.com

Scott A. Stichter on behalf of Debtor Miracle Hill Nursing and Rehabilitation Center, Inc. sstichter.ecf@srbp.com

Scott A. Stichter on behalf of Defendant Miracle Hill Nursing and Rehabilitation Center, Inc. sstichter.ecf@srbp.com

United States Trustee USTPRegion21.TL.ECF@usdoj.gov

                                        */s/ Scott A. Stichter*
                                        Scott A. Stichter

11

4883-5856-8833, v. 4