**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

In re:

MIRACLE HILL NURSING AND                    Case No.: 23-40398-KKS
REHABILITATION CENTER, INC.                 Chapter 11

        Debtor.
_____/

**1329 ABRAHAM STREET HOLDINGS LLC'S OBJECTION TO
DEBTOR'S APPLICATION TO EMPLOY GIBSON KOHL, P.L., AS
SPECIAL LITIGATION COUNSEL TO THE DEBTOR,
EFFECTIVE AS THE PETITION DATE**

Secured Creditor, 1329 ABRAHAM STREET HOLDINGS LLC ("1329

ASH"), by and through undersigned counsel, by and through undersigned counsel,

pursuant to 11 U.S.C. §§ 105, 327 and 330, hereby files this Objection to the Debtor,

MIRACLE HILL NURSING AND REHABILITATION CENTER, INC.'s

("Debtor") Application for Authorization to Employ Gibson Kohl P.L., as Special

Litigation Counsel to the Debtor, Effective as of the Petition Date ("Application to

Employ" or "Application") [D.E. 67], and in support thereof states as follows:

**I.      BACKGROUND**

   **A. Bankruptcy Proceeding**

        1.      On October 12, 2023 ("Petition Date"), the Debtor filed for voluntary

relief under Chapter 11, Title 11 of the U.S. Bankruptcy Code ("Estate").

2.      The Debtor is fee simple owner of certain real property located at 1329 Abraham Street, Tallahassee, Florida 32304, operated by the Debtor as a skilled nursing and rehabilitation center.

3.      The Debtor continues to manage and operate its affairs as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. To date, no trustee or examiner has been appointed.

4.      On November 6, 2023, the Debtor filed its Application to Employ James D. Gibson, Esq. ("Gibson") of Gibson Kohl, P.L. ("Gibson Kohl"), as special counsel to the Debtor [D.E. 67], together with an Affidavit of James D. Gibson, Esq. in support thereof ("Gibson Affidavit") [D.E. 67, pp.6-10].

**B. Pre-Petition Lawsuits**

5.      Gibson and Gibson Kohl previously represented the Debtor in *at least* two (2) pre-petition lawsuits filed in the Circuit Court of the Second Judicial Circuit, Leon County, Florida: (1) *1329 Abraham Street v. Miracle Hill, et al.*, Case No. 2023-CA-001304 (the "Foreclosure Action")[1] and (2) *Miracle Hill v. Florida State Primitive Baptist Convention, et al.*, Case No. 2022-CA-001694[2] (collectively, the "Lawsuits").

---

[1] Removed by the Debtor on October 12, 2023 (Adv. Pro. No. 23-04009-KKS) (the "Foreclosure Adversary Action"). Neither the Application nor the Gibson Affidavit refer or mention the Foreclosure Adversary Action.

[2] This action was not removed to the Bankruptcy Court.

6.      Notably, the Gibson Affidavit fails to disclose Gibson's and Gibson Kohl's specific participation in the Lawsuits—or any other pre-petition legal matter handled by Gibson on behalf of the Debtor. Rather, the Gibson Affidavit and Application simply make vague reference to Gibson/Gibson Kohl previously representing the Debtor "in a number of lawsuits" [D.E. 67, ¶4] and "various lawsuits" [Aff., ¶2], respectively.

## C. **The Debtor's Proposed Special Counsel**

7.      The Gibson Affidavit states that "Gibson Kohl received the aggregate sum of $7,500 on account of prepetition services and as a retainer for postpetition services (the "Retainer").[3] The Retainer was paid to Gibson Kohl by the Debtor. The Retainer was to be applied first to prepetition services (including costs) and the balance was to reduce Gibson Kohl's application for postpetition fees and costs." [Aff., ¶5]. Expressly absent from the Debtor's and Gibson's representations is the amount of Gibson's pre-petition fees, the outstanding balance(s) owed to Gibson Kohl for the Lawsuits (and all other pre-petition matters handled on behalf of the Debtor), which of the Lawsuits (or other matters) the "retainer" was paid for, how

---

[3] The "retainer" was paid by the Debtor on October 5, 2023 – *approximately 7 days prior to the Petition Date*. The Application and Gibson Affidavit fail to disclose whether the Debtor intended to previously compensate Gibson Kohl on a contingency basis.

the "retainer" was spent to date and on what matters, and whether the "retainer" is refundable to the Debtor. *See* 11 U.S.C. § 329(b).[4]

8.      The Gibson Affidavit represents that "no attorney employed by Gibson Kohl presently represents any creditor, … party to an executory contract with the Debtor, or person otherwise adverse or potentially adverse to the Debtor or the estate, on any matter whether such representation is related or unrelated to the Debtor or the estate", yet then goes on to reveal that *"Gibson Kohl has represented and continues to represent the management company."* [Aff., ¶14] (emphasis added). The Gibson Affidavit conspicuously omits the name of the "management company" and to what extent it has or will be paid any sums from said management company pre- or post-petition.

9.      A review of the Debtor's Chapter 11 Case Management Summary [D.E. 21] and Schedules [D.E. 74] reveals that not only is the Debtor managed by Innovative Health Care Management Services, Inc. ("Innovative"), but Innovative is also a party to an executory contract with the Debtor [D.E. 74, p.35] and owed a pre-petition sum of $24,722.27 as an unsecured creditor [D.E. 74, p.19 at 3.58].[5]  If Gibson Kohl does, in fact, represent Innovative or any other "management

---

[4] Curiously, the Debtor's Schedules omit any debts owed to Gibson Kohl, but does disclose several pre-petition transfers to Gibson Kohl [D.E. 74, pp.48-52].

[5] On information and belief, other management companies or similar entities may include Ingram Accounting & Consulting LLC and Access Information Holding LLC/Management of Georgia LLC. *See* Schedules [D.E. 74].

company" owed money from the Debtor, then the Gibson Affidavit would contain material misrepresentations as to Gibson's adverse interests to the Debtor and disqualify Gibson Kohl as counsel for the Debtor in any capacity.

10.    These omissions are further compounded by the fact that both the Application and Gibson Affidavit fail to identify the specific special purpose for Gibson's retention and provides no meaningful detail into the purported "various issues which may arise in the bankruptcy case, including assisting the Debtor as to the administration of the bankruptcy case as well as representing the Debtor in contested matters and adversary proceedings that may be filed by the Debtor." [D.E. 67, ¶5].

11.    To the extent the Debtor seeks to retain *special counsel* for "assisting the Debtor as to the administration of the bankruptcy case" [D.E. 67, ¶5] or "to advise [the Debtor] with respect to various legal and financial issues" [Aff., ¶4],[6] such retention is inappropriate, improper, and entirely duplicative of Debtor's proposed general counsel, Stichter Reidel Blain & Postler P.A. ("SRBP P.A.").

12.    Critically, both the Application and Gibson Affidavit fail to disclose Gibson Kohl's proposed hourly rates or arrangement for compensation, in

---

[6] Gibson Kohl does not appear to be an accounting firm or otherwise employ any certified public accountants or similar qualified professionals, and thus it is entirely unclear what "financial issues" the Debtor proposes to retain Gibson Kohl for.

contravention to 11 U.S.C. § 326 and in violation of Fed.R.Bank.P. 2014(a) ("The application shall state … any proposed arrangement for compensation…").[7]

13.    By earmarking the pre-petition "retainer" held by Gibson Kohl "to be applied first to prepetition services (including costs) and the balance was to reduce Gibson Kohl's application for postpetition fees and costs" [Aff., ¶5], the Debtor violates its fiduciary duties to the Estate and its other creditors, including 1329 AHS, by violating the fundamental principle of bankruptcy, to wit: the equal distribution and treatment of similarly situated creditors under the priority scheme set forth in the Bankruptcy Code.

14.    For the reasons herein and set forth below, 1329 AHS objects to the Application because the Application lacks adequate disclosure of pertinent information and Gibson Kohl's potential pre-petition legal fees and representation of Innovative, as creditor(s) of the Estate, constitute a disqualifying "interest adverse" to the Estate under 11 U.S.C. § 327(e).  Accordingly, the Court should deny the Application.

## II.    LEGAL ARGUMENT

### A. <u>The Requirements of 11 U.S.C. § 327(e)</u>

---

[7] The Application and Gibson Affidavit also fail to comply with 11 U.S.C. § 329.

15.    The Application seeks retention under the special counsel retention provisions of 11 U.S.C. § 327(e).[8] "As a general principle, professional persons employed by the trustee should be free of any conflicting interest which might, in the view of the trustee or the bankruptcy court, affect the performance of their services or which might impair the high degree of impartiality and detached judgment expected of them during the administration of a case." *In re Amdura Corp.*, 121 B.R. 862, 865 (Bankr.D.Colo.1990).

16.    In order to meet the requirements for retention as special counsel pursuant to 11 U.S.C. § 327(e), the Debtor bears the burden of establishing all of the following requirements: (1) that Gibson is being employed for a specific special purpose; (2) that Gibson previously represented the Debtor; (3) that employment will be in the best interest of the Estate; and (4) Gibson does not represent or hold any interest adverse to the Debtor or Estate concerning the matter at hand. *In re Abrass*, 250 B.R. 432, 435 (Bankr.M.D.Fla.2000).

17.    Although the Bankruptcy Code does not define what it means to hold an "adverse interest," a definition accepted by the Eleventh Circuit includes (1) the possession of any economic interest that would tend to lessen the value of the

---

[8] 11 U.S.C. § 327(e) states, in relevant part: "[t]he trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, *an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed*." (emphasis added).

bankruptcy estate or possession or assertion of an economic interest that would create either an actual or potential dispute in which the estate is a rival claimant or (2) the possession of a predisposition under circumstances that render such a bias against the estate. *See Electro-Wire Prods. v. Sirote & Permutt, P.C. (In re Prince)*, 40 F.3d 356, 361 (11th Cir. 1994) (citations omitted). Attorneys represent an adverse interest when they serve as an attorney for any party holding an adverse interest. *Tevis v. Wilke, Fleury, Hoffelt, Gould & Birney, LLP (In re Tevis)*, 347 B.R. 679, 688 (B.A.P. 9th Cir.2006).

18.    "The bankruptcy court, not the professionals, must determine which prior connections rise to the level of an actual conflict or pose the threat of a potential conflict. Therefore, the professional must disclose all of its previous contacts with any party in interest." *In re Citation Corp.*, 493 F.3d 1313, 1321 (11th Cir.2007).

19.    Potential conflicts of interest may constitute adverse interests sufficient to preclude employment. *See Matter of Hutch Holdings, Inc.*, 532 B.R. 866, 878 (Bankr.S.D.Ga.2015) (bankruptcy court is well within its discretion to deny the appointment of a law firm "to prevent even the chance that any potential conflicts of interest could later materialize into an actual conflict of interest"). Although courts have distinguished between actual and potential conflicts, "a more recent trend elides the distinction and focuses on the concerns of divided loyalties and affected judgments." *In re Granite Partners, L.P.*, 219 B.R. 22, 33 (Bankr.S.D.N.Y.1998). In

fact, some "courts have rejected any distinction between the effect of actual and potential conflicts of interest in a bankruptcy matter." *In re Perry*, 194 B.R. 875, 879 (E.D.Cal.1996) (citing *Rome v. Braunstein*, 19 F.3d 54, 59 (1st Cir. 1994)). Importantly, however, "[t]he test [for the presence of adverse interests] is not retrospective; courts only examine present interests when determining whether a party has an adverse interest." *In re Project Orange Associates, LLC*, 431 B.R. 363, 370 (Bankr.S.D.N.Y.2010).

**B. <u>Neither Gibson Nor Gibson Kohl Have Demonstrated That They Do Not Represent or Hold Any Interest Adverse to the Debtor or Estate</u>**

20.     The Application for Gibson and Gibson Kohl does not explain whether (i) Gibson's pre-petition legal fees incurred in connection with the Lawsuits (and any other undisclosed matters) and (ii) potential representation of "the management company" [Aff., ¶14] give rise to actual and/or potential conflicts or otherwise meaningfully explain how or why neither Gibson nor Gibson Kohl "represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." 11 U.S.C. § 327(e). Taken as a whole, the Estate appears adverse to one or more creditors whom Gibson represents or has an interest in.

21.     "[W]hen the 'adverse interest' specter looms like a dark cloud over a professional's employment under § 327(e), the court *must closely scrutinize the proposed 'special purpose' for that employment* before it can properly consider the

'adverse interest' and 'best interest of the estate' tests." *In re Running Horse L.L.C.*, 371 B.R. 446, 452 (Bankr.E.D.Ca.2007) (emphasis added).

22.     The Debtor's Application seeks to employ Gibson "to assist the Debtor as to various issues which may arise in the bankruptcy case, including assisting the Debtor as to the administration of the bankruptcy case as well as representing the Debtor in contested matters and adversary proceedings that may be filed by the Debtor" [D.E. 67, ¶5] and "to advise [the Debtor] with respect to various legal and financial issues" [Aff., ¶4].[9] Other than the Lawsuits, including the removed Foreclosure Action, the only additional specified purpose for the employment of Gibson is basically a vague assertion that the Debtor intends to use Gibson for any other matter it deems appropriate at any time. This is insufficient to meet the specific special purpose standard. *See Abrass*, 250 B.R. at 435 (painting "with a broad-brush stroke a multitude of general purposes" for the employment of special counsel is insufficient).

23.     Given the vague nature of the specific special purpose identified, the Debtor's proposed employment of Gibson appears to overlap with proposed general counsel for the Debtor. In fact, general counsel for the Debtor removed the Foreclosure Action and has conducted its proceedings so far, and the Application

---

[9] Gibson Kohl does not appear to be an accounting firm or otherwise employ any certified public accountants or similar qualified professionals, and thus it is entirely unclear what "financial issues" the Debtor proposes to retain Gibson Kohl for.

does not seek to employ Gibson as counsel in the Foreclosure Adversary Action currently before this Court, but rather for "contested matters and adversary proceedings that may be filed by the Debtor." [D.E. 67, ¶5]. Any involvement of Gibson in this purported reorganization would duplicate efforts that can be borne by SRBP P.A., as proposed general counsel for the Debtor. *See e.g., In re First Am. Health Care of Georgia, Inc*., 1996 WL 33404562 (Bankr.S.D.Ga. April 18, 1996).

24.     In analyzing the specific special purpose of the proposed employment of Gibson, the Court should also consider all relevant facts surrounding the Debtor's bankruptcy, including the "nature of the debtor's business, all foreseeable employment of 'special' counsel, the history and relationship between the Debtor and the proposed firm, the progress of any ongoing litigation, the expense of replacement counsel, potential conflicts of interest, and the role of general counsel." *Id*. at *3.

25.     The role of Gibson and Gibson Kohl in this bankruptcy case is not only unclear, but also unnecessary in light of the procedural posture of the Lawsuits and the involvement of Debtor's proposed general counsel, SRBP P.A. Allowing the retention of Gibson at this stage is merely a "vehicle to permit counsel to remain vitally active in the conduct of the case" at the expense of the Estate, and ultimately at the expense of 1329 AHS, where Gibson does not meet the disinterested standard

of 11 U.S.C. § 327(a).[10] *See In re Interstate Distribution Center Assoc., Ltd.*, 137 B.R. 826, 833 (Bankr.D.Colo.1992). Indeed, the Debtor's Application is akin to approving Gibson's retention pursuant to the general retention provisions for a Debtor's general counsel under 11 U.S.C. § 327(a), rather than the special counsel retention provisions of § 327(e), notwithstanding that Gibson Kohl potentially represents and hold interests adverse to Debtor and the Estate, in clear violation of the standards for retention of special counsel set forth in § 327(e).

26.    Based on the totality of the circumstances set forth herein, the interests of the Debtor appear to conflict with its pre-petition counsel. Because Gibson has <u>not</u> disclosed (i) the name of the "management company" that Gibson Kohl "has represented and continues to represent" [Aff., ¶14] or (ii) the amount of pre-petition outstanding legal fees potentially owed to Gibson Kohl in connection with the Lawsuits, which Gibson Kohl seeks to credit against the pre-petition "retainer" – while omitting Gibson Kohl professional(s)' hourly rates – neither Gibson nor Gibson Kohl have met their burden in establishing that they can provide objective and unbiased advice to the Debtor.

---

[10] 11 U.S.C. § 327(a) states that: "[e]xcept as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, *that do not hold or represent an interest adverse to the estate, and that are disinterested persons*, to represent or assist the trustee in carrying out the trustee's duties under this title." (emphasis added).

27.     Absent additional information demonstrating that Gibson and Gibson Kohl can render unbiased advice and are otherwise disinterested, the Application should be denied. *See Miller Buckfire & Co., LLC v. Citation Corp. (In re Citation Corp.),* 493 F.3d 1313, 1321 (11th Cir.2007) (stating "[t]he bankruptcy court, not the professionals, must determine which prior connections rise to the level of an actual conflict or pose the threat of a potential conflict. Therefore, the professional must disclose all of its previous contacts with any party in interest"); *see also In re Keller Fin. Servs. of Fla., Inc.,* 243 B.R. 806, 812 (Bankr.M.D.Fla.1999) ("The professional must disclose all facts that bear on his disinterestedness and cannot usurp the court's function by unilaterally choosing which connections impact on his disinterestedness, and which do not").

### C. Gibson's Actual Conflicts Negate Any Exception Permitting Simultaneous Representation of the Estate and Its Creditors

28.     Gibson clearly fails to meet the disinterested standard. Not only are his interests in Gibson Kohl (which appears to be a creditor) materially adverse to the Estate and its other creditors, but Gilbert himself possesses an actual, unsalvageable conflict if Gibson Kohl actually represents Innovative, a clear creditor of the Estate.

29.     "An attorney who represents a person or entity who is not disinterested … fails to meet the disinterested standard." *In re Abrass*, 250 B.R. at 434. Neither Gibson nor Gibson Kohl can satisfy the disinterested standard because they appear to either be creditors and/or represent creditors whose interests are adverse to the

Estate. It is axiomatic that a creditor is <u>not</u> a "disinterested person." *See* 11 U.S.C. § 101(14)(A). While current representation of a creditor may not *per se* bar employment under Section 327(c), the existence of an "actual conflict of interest" will disqualify such employment. *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 476 (3d Cir.1998). The term "actual conflict of interest" is not defined by the Bankruptcy Code and has been given meaning largely through a case-by-case review of each application. *B H & P Inc.*, 949 F.2d 1300, 1315 (3d Cir. 1991).

30. Here, the actual conflict exists because Gibson Kohl's dual representation of their (and the management company's) pecuniary interests and the Debtor engenders conflicting loyalties to favor Gibson Kohl over the Estate's interests. The presence of this competing interest is problematic, and the "bankruptcy court must determine whether any competing interest of a court-appointed professional "created either a meaningful incentive to act contrary to the best interests of the estate and its sundry creditors—an incentive sufficient to place those parties at more than acceptable risk—or the reasonable perception of one." *In re Kings River Resorts, Inc*., 342 B.R. 76, 84 (Bankr.E.D.Cal.2006) (quoting *Rome*, 19 F.3d at 58).

31. In its Application, the Debtor represents that "[a]s a result of [Gibson Kohl's] representation of the Debtor prior to the Petition Date, Gibson Kohl has extensive experience and knowledge and is well qualified to act as special litigation

counsel on behalf of the Debtor" [D.E. 67, ¶8]; however, as stated above, both the Debtor and Gibson Kohl conveniently fail to disclose the identity and relationship with the "management company" or the amount of pre-petition legal fees incurred by Gibson Kohl in connection with the Lawsuits (and any other matters handled on behalf of the Debtor), which appear to be the cause of the Debtor's insolvency filing.

32. Gibson's interest in a potential creditor (Gibson Kohl) and simultaneous representation of Gibson Kohl, the unidentified "management company", *and* the Estate undoubtedly will create the appearance of impropriety that otherwise could be avoided by employing any other qualified attorney. In considering dual representation, courts have held that a conflict of interest in considering a professional's employment under Section 327(e) may not be waived. *Meredith v. Thralls*, 114 F.2d 473, 475 (2d Cir. 1944), *cert denied*, 323 U.S. 758 (1944); *In re American Energy Trading, Inc.*, 291 B.R. 154, 157 (Bankr.W.D.Mo.2003) (trustee cannot waive actual conflict from ongoing dual representation); *In re American Printers & Lithographers, Inc.*, 148 B.R. 862, 867 (Bankr.N.D.Ill.1992); *In re Amdura Corp.*, 121 B.R. 862, 866 (Bankr.D.Colo.1990); *In re Kuykendahl Place Assocs., Ltd.*, 112 B.R. 847, 851 (Bankr.S.D.Tex.1989).[11]

---

[11] Nothing in the Application states that the Debtor has waived any potential conflict created by Gibson Kohl's pre-petition legal services.

33.     If the Debtor is permitted simultaneously employ Gibson and Gibson Kohl, the situation would appear to create "divided loyalty and affected judgments." *In re Granite Partners, L.P.*, 219 B.R. at 37. Gibson would be serving two masters with conflicting interests. Gibson Kohl's unclear status as a creditor and/or Gibson's counsel to creditor(s) undoubtedly affects Gibson's judgment as a fiduciary of the Debtor. "The requirements of section 327 cannot be taken lightly, for they 'serve the important policy of ensuring that all professionals appointed pursuant to [the section] tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities.'" *In re Leslie Fay Companies, Inc.*, 175 B.R. 525, 532 (Bankr.S.D.N.Y.1994) (quoting *Rome,* 19 F.3d at 58); *see Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985) (holding that an estate professional owes a "fiduciary duty … to creditors"); *In re Vebeliunas*, 231 B.R. 181, 191 (Bankr.S.D.N.Y.1999) ("professionals engaged in the conduct of a bankruptcy case should be free of the slightest personal interest which might be reflected in their decisions concerning matters of the debtor's estate or which might impair the high degree of impartiality and detached judgment expected of them during the course of administration"). For these reasons, the Application must be ultimately denied.

### D. **Undisclosed Fees and Rates Improperly Benefit Gibson and Gibson Kohl**

34.     Gibson and Gibson Kohl's lack of transparency as to their compensation – both as to their hourly rates and relationship with the unidentified "management company" – improperly benefits Gibson and Gibson Kohl, and any use of the pre-petition "retainer" paid by the Debtor just seven days prior to the Petition Date, which the Debtor now seeks to use for the benefit of rendering unspecified special services and perpetrating unidentified litigation against unknown parties,[12] further provides Gibson and Gibson Kohl with an unjustified windfall.

35.     Any hourly rate arrangement should be disclosed, subject to review for reasonableness and improvidence under 11 U.S.C. §§ 328(a) and 330.[13] While Section 328(a) permits a trustee to employ a professional "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis", it is inappropriate to withhold the hourly rates of the professionals at Gibson Kohl. The Eleventh Circuit defines the reasonable hourly rate as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation."

---

[12] Excluding the Foreclosure Adversary Action, which is not even described or otherwise mentioned in the Application or Gibson Affidavit.

[13] 1329 AHS expressly preserves all rights concerning the reasonableness of any fees sought by Gibson and Gibson Kohl. *See* 11 U.S.C. § 328(a). "A court may deny compensation to professionals who are not disinterested persons." *In re Greater Blessed Assurance Apostolic Temple, Inc.*, 6:20-BK-0148-KSJ, 2021 WL 1117760 (Bankr.M.D.Fla. Mar. 24, 2021).

*Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir.1988). Any hourly rates sought to be assessed against the Estate should be disclosed and established in advance of the Court's approval of any professional retention.

36.   Further, Federal Rule of Bankruptcy Procedure 2014(a) specifically provides that an employment application "shall state the specific facts showing the necessity for the employment" and "the reasons for the selection." Fed.R.Bankr.P. 2014. Rule 2014 also requires disclosure of "any proposed arrangement for compensation." *Id.* An "arrangement for compensation" is more than hourly rates; it covers the broader spectrum of details of how compensation will be managed and paid. Under Rule 2014, "[t]he professional must disclose all facts that bear on his disinterestedness and cannot usurp the court's function by unilaterally choosing which connections impact on his disinterestedness, and which do not." *In re Keller Fin. Servs. of Fla., Inc.*, 243 B.R. 806, 812 (Bankr.M.D.Fla.1999). Utilizing Rule 2014, courts may properly deny a retention application that does not adequately justify the reasons for a professional's selection.

37.   Indeed, Gibson Kohl will most certainly seek a distribution from the Estate; however, to the extent Gibson Kohl intends to also collect from any "management company" related to the Debtor and/or apply the pre-petition "retainer" to pre-petition legal fees, such has not been properly disclosed pursuant to Rule 2014. No supplemental disclosures have been filed by Gibson Kohl. Thus,

while serving as counsel to the Debtor, Gibson Kohl's retention is neither "in the best interest of the estate" nor innocuous to the Estate, all in violation of Section 327(e) and Rule 2014.

38.    The Debtor and Gibson Kohl failed to follow the strict requirements of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure regarding employment and compensation of professionals. These requirements serve an essential substantive purpose and are not mere procedural formalities. *See e.g., In re Florida Brethren Homes, Inc.,* 92 B.R. 536, 537 (Bankr.S.D.Fla.1988) ("[t]he statutory requirement for court approval together with the disclosure requirement of [Rule] 2014(a) each serves an essential purpose").

39.    The Application lacks any information concerning the formalities of filing fee applications as required by Local Rule 2016-1(B). This is inappropriate as the process of filing fee applications should not be underrated. Transparency is necessary. This Court should not approve employment for any special counsel who not only seek to avoid the formal filing of fee applications, but also bypass the timekeeping requirements set by the UST Fee Guidelines, all of which undermines the integrity of the bankruptcy system. Every professional retained by the Debtor should be obligated to file the appropriate fee application, subject to judicial review. The lack of transparency as to Gibson and Gibson Kohl's fees demonstrate an implied lack of good faith by the Debtor and his proposed counsel.

40.     Finally, the Debtor's request for *nunc pro tunc* employment of Gibson Kohl is not appropriate. "A nunc pro tunc approval of an application to employ a professional is the exception, not the rule, and should not be granted if the professional's failure to file a timely application was due to something other than excusable neglect." *In re Bicoastal Corp.*, 118 B.R. 855 (Bankr.M.D.Fla.1990).

41.     Not only must Gibson meet the requirements for appointment under 11 U.S.C. § 327(e), such that the Court determines that Gibson would have been appointed initially, but the Debtor must also show circumstances so extraordinary that retroactive approval is warranted. The Debtor alleges no facts to support any circumstance necessitating Gibson's *nunc pro tunc* application to the Petition Date, and thus retention of Gibson and Gibson Kohl *nunc pro tunc* is inappropriate.

## RESERVATION OF RIGHTS

42.     1329 AHS expressly reserves the right to amend or supplement these objections based upon events transpiring hereafter and disclosure both formally and informally made by the Debtor and those acting informally on their behalf, at any time in the future, including at any hearing.

**WHEREFORE**, for the reasons more particularly set forth herein, 1329 Abraham Street Holdings LLC respectfully requests the Court deny the Application to employ James D. Gibson and Gibson Kohl P.L. as special counsel to the Debtor, or in the alternative, require Gibson and Gibson Kohl's full disclosure of all matters

raised herein in strict compliance with the Bankruptcy Code and rules and guidelines

of this Court, and for such other and further relief as the Court deems just and proper.

Dated: November 15, 2023          Respectfully submitted,

**READ LAW PLLC**
*Counsel for Secured Creditor,*
*1329 Abraham Street Holdings LLC*
25 SE Second Ave, Suite 828
Miami, Florida 33131
Phone: (305) 209-2131
asr@alexisreadlaw.com

By: */s/ Alexis S. Read*
        Alexis S. Read, Esq.
        Florida Bar No. 98084

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 9013-1 (2020 Advisory Committee Notes) and District

Local Rule 7.1(F), the body of this Motion contains 4,854 words according to the

word count in the word processing program used to create it.

By: */s/ Alexis S. Read*
        Alexis S. Read, Esq.
        Florida Bar No. 98084

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 15, 2023, a true and correct copy of

the foregoing was served via CM/ECF electronic transmission to those parties who are

currently on the list to receive e-mail notice and service for this case, and on the Court's

Mailing Matrix attached hereto:

- Blake J. Delaney    blake.delaney@bipc.com, kara.bernstein@bipc.com;eservice@bipc.com;donna.curcio@bipc.com;joseph.roadarmel@bipc.com
- Jodi Daniel Dubose    jdubose@srbp.com, jdubose.ecf@srbp.com
- Katherine C Kerwin    katherine.kerwin@usdoj.gov, Marsha.S.Francis@usdoj.gov;caseview.ecf@usdoj.gov;Kristina.Bennett@usdoj.gov
- Conor McLaughlin    conor.mclaughlin@usdoj.gov
- Eric Scott Pendergraft    ependergraft@slp.law, dwoodall@slp.law;dlocascio@slp.law;pmouton@slp.law
- Adina L. Pollan    apollan@mcglinchey.com, nreid@mcglinchey.com
- Alexis Sophia Read    asr@alexisreadlaw.com
- Scott A. Stichter    sstichter.ecf@srbp.com
- United States Trustee    USTPRegion21.TL.ECF@usdoj.gov
- James D. Gibson - legaljimjdg@comcast.net

**READ LAW PLLC**
*Counsel for Secured Creditor,*
*1329 Abraham Street Holdings LLC*
25 SE Second Ave, Suite 828
Miami, Florida 33131
Phone: (305) 209-2131
asr@alexisreadlaw.com

By:  */s/ Alexis S. Read*
       Alexis S. Read, Esq.
       Florida Bar No. 98084