UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

In re:                                          Chapter 11

MIRACLE HILL NURSING AND                        Case No. 23-40398-KKS
REHABILITATION CENTER, INC.,

     Debtor.

_____/

**DISCLOSURE STATEMENT FOR PLAN
OF MIRACLE HILL NURSING AND REHABILITATION
<u>CENTER, INC. UNDER CHAPTER 11 OF THE BANKRUPTCY CODE</u>**

Scott A. Stichter (FBN 0710679)
Jodi D. Dubose (FBN 52651)
Stichter, Riedel, Blain & Postler, P.A.
110 East Madison Street, Suite 200
Tampa, Florida 33602
Phone:  (813) 229-0144
Fax:  (813) 229-1811- Fax
Email:  sstichter@srbp.com
       jdubose@srbp.com
Attorneys for Debtor

Tallahassee, Florida
Dated as of February 9, 2024

THIS DISCLOSURE STATEMENT MAY   NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN OF REORGANIZATION OF MIRACLE HILL NURSING AND REHABILITATION CENTER, INC. UNDER CHAPTER 11 OF THE BANKRUPTCY CODE (AS AMENDED FROM TIME TO TIME) AND NOTHING CONTAINED IN THIS DISCLOSURE STATEMENT WILL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE ADVICE ON THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTOR.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION, NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

THE DESCRIPTION OF THE DEBTOR'S PLAN CONTAINED IN THIS DISCLOSURE STATEMENT IS INTENDED AS A SUMMARY ONLY AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN ITSELF. **<u>EACH CREDITOR AND HOLDER OF AN INTEREST SHOULD READ, CONSIDER AND CAREFULLY ANALYZE THE TERMS AND PROVISIONS OF THE PLAN.</u>**

**THE PLAN PROPOSES EXCULPATION FROM LIABILITY AS TO THE DEBTOR AND VARIOUS NON-DEBTOR PARTIES FOR CERTAIN POSTPETITION ACTIONS IN CONNECTION WITH THE BANKRUPTCY CASE, WHICH PROVISIONS WOULD ENJOIN THE DEBTOR, HOLDERS OF CLAIMS, HOLDERS OF INTERESTS, AND OTHER PARTIES FROM PURSUING CERTAIN ACTIONS AGAINST SUCH PARTIES EXCEPT AS OTHERWISE PROVIDED IN THE PLAN.  ALL CREDITORS, HOLDERS OF INTERESTS AND OTHER PARTIES IN INTEREST ARE URGED TO READ CAREFULLY ARTICLE 11 OF THE PLAN ON EXCULPATION FROM LIABILITY.**

THE SOLICITATION OF ACCEPTANCES OF THE PLAN OR THE GIVING OF ANY INFORMATION OR THE MAKING OF ANY REPRESENTATION OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT AND THE

EXHIBITS OR DOCUMENTS ATTACHED HERETO OR INCORPORATED BY
REFERENCE OR REFERRED TO HEREIN IS NOT AUTHORIZED BY THE
PLAN PROPONENT, AND IF GIVEN OR MADE, SUCH INFORMATION OR
REPRESENTATION MAY NOT BE RELIED UPON AS HAVING BEEN
AUTHORIZED BY THE DEBTOR.  SUCH ADDITIONAL REPRESENTATIONS
SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR, WHO IN TURN
WILL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR
ACTION AS MAY BE DEEMED APPROPRIATE.  THE DELIVERY OF THIS
DISCLOSURE STATEMENT WILL NOT UNDER ANY CIRCUMSTANCES
IMPLY THAT THE INFORMATION HEREIN IS CORRECT AS OF ANY TIME
SUBSEQUENT TO THE DATE HEREOF.  CREDITORS AND HOLDERS OF
INTERESTS ARE ENCOURAGED TO REVIEW THE BANKRUPTCY DOCKET
IN THE BANKRUPTCY CASE IN ORDER TO EVALUATE EVENTS WHICH
OCCUR BETWEEN THE DATE OF THIS DISCLOSURE STATEMENT AND
THE DATE OF THE CONFIRMATION HEARING.  **ALL CREDITORS THAT
ARE ENTITLED TO VOTE ARE ENCOURAGED TO READ AND
CAREFULLY CONSIDER THIS ENTIRE DISCLOSURE STATEMENT,
INCLUDING THE PLAN OF REORGANIZATION AND THE MATTERS
DESCRIBED IN THIS DISCLOSURE STATEMENT, PRIOR TO
SUBMITTING A BALLOT PURSUANT TO THIS SOLICITATION.**

IN THE EVENT THAT ANY OF THE CLASSES OF HOLDERS OF IMPAIRED
CLAIMS OR INTERESTS VOTE TO REJECT THE PLAN (1) THE DEBTOR
MAY ALSO SEEK TO SATISFY THE REQUIREMENTS FOR CONFIRMATION
OF THE PLAN WITH RESPECT TO THAT CLASS UNDER THE "CRAMDOWN"
PROVISIONS OF § 1129(b) OF THE BANKRUPTCY CODE (11 U.S.C. §1129(b))
AND, IF REQUIRED, MAY FURTHER AMEND THE PLAN TO CONFORM TO
SUCH REQUIREMENTS OR (2) THE PLAN MAY BE OTHERWISE MODIFIED
OR WITHDRAWN AS PROVIDED THEREIN.  THE REQUIREMENTS FOR
CONFIRMATION, INCLUDING THE VOTE OF HOLDERS OF IMPAIRED
CLAIMS AND INTERESTS TO ACCEPT THE PLAN AND CERTAIN OF THE
STATUTORY FINDINGS THAT MUST BE MADE BY THE BANKRUPTCY
COURT, ARE SET FORTH IN THE SECTION OF THIS DISCLOSURE
STATEMENT TITLED "VOTING ON AND CONFIRMATION OF THE PLAN."

APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY
COURT DOES NOT INDICATE THAT THE BANKRUPTCY COURT
RECOMMENDS EITHER ACCEPTANCE OR REJECTION OF THE PLAN, NOR
DOES SUCH APPROVAL CONSTITUTE A DETERMINATION BY THE

3

BANKRUPTCY COURT OF THE FAIRNESS OR MERITS OF THE PLAN OR OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT.

**THE DEBTOR BELIEVES THAT THE PLAN IS IN THE BEST INTERESTS OF CREDITORS AND HOLDERS OF INTERESTS.  ALL CREDITORS AND HOLDERS OF INTERESTS ARE THEREFORE URGED TO VOTE IN FAVOR OF THE PLAN.**  TO BE COUNTED, YOUR BALLOT MUST BE COMPLETED AND EXECUTED AND RECEIVED BY NO LATER THAN THE TIME SET BY THE BANKRUPTCY COURT.

4

### INDEX TO EXHIBITS TO
### DISCLOSURE STATEMENT

EXHIBIT A        LIQUIDATION ANALYSIS
                 (to be supplemented)

EXHIBIT B        FINANCIAL PROJECTIONS
                 (to be supplemented)

4876-0861-7380, v. 4

## DISCLOSURE STATEMENT FOR PLAN OF REORGANIZATION OF MIRACLE HILL NURSING AND REHABILITATION CENTER, INC. UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

MIRACLE HILL NURSING AND REHABILITATION CENTER, INC. (the "**Debtor**" or the "**Plan Proponent**"), submits this Disclosure Statement pursuant to § 1125 (11 U.S.C. §1125) of the Bankruptcy Code, 11 U.S.C. §101, *et seq.* (the "**Bankruptcy Code**"), in connection with the solicitation of votes on the Plan from Holders of Impaired Claims against the Debtor and the hearing on Confirmation of the Plan of Reorganization of Miracle Hill Nursing and Rehabilitation Center, Inc. ("**Miracle Hill**") Under Chapter 11 of the Bankruptcy Code (the "**Plan**"), as scheduled by the Bankruptcy Court.

This Disclosure Statement is subject to the approval of the Bankruptcy Court in accordance with § 1125(b) of the Bankruptcy Code as containing information of a kind and in sufficient detail adequate to enable a hypothetical reasonable investor typical of the Holders of Claims of the relevant Voting Classes (as defined below) to make an informed judgment whether to accept or reject the Plan. Effort has been made to provide meanings of capitalized and other terms used in this Disclosure Statement. Reference is made to the Plan, however, for the actual meanings of all capitalized and other terms used in this Disclosure Statement and in the Plan and for controlling language with respect to any provision referenced in this Disclosure Statement or in the Plan. Terms used in this Disclosure Statement and in the Plan are defined in Article 2 of the Plan. In the event of a conflict between the definition of any term or any other provision contained in this Disclosure Statement and the corresponding definition or provision contained in the Plan, the definition or provision contained in the Plan shall control. The conditional approval of this Disclosure Statement by the Bankruptcy Court and the transmittal of this Disclosure Statement does not, however, constitute a determination by the Bankruptcy Court as to the merits of the Plan and should not be interpreted as being a recommendation by the Bankruptcy Court either to accept or reject the Plan.

In summary, but subject to more specific details provided herein, the Plan provides for payment of certain Claims on the Effective Date. Other Claims will be paid over time from the Debtor's profitable operations, the Cash Contribution or other payment means more specifically described in the Plan.

4876-0861-7380, v. 4

The Debtor believes that Confirmation of the Plan is clearly in the best interests of Creditors and Holders of Interests, and strongly recommend that Creditors holding Allowed Claims in the Voting Classes vote to accept the Plan.

## PURPOSE OF DISCLOSURE STATEMENT

The purpose of this Disclosure Statement is to provide Holders of Claims and Interests with adequate information to make an informed judgment about the Plan. This information includes, among other things, the history of the Debtor prior to the filing of the Bankruptcy Case, the events leading to the filing of the Bankruptcy Case, a brief summary of significant events to date in the Bankruptcy Case, and a summary explanation of how the Plan will function.

This Disclosure Statement contains important information about the Plan and considerations pertinent to a vote for or against the Confirmation of the Plan.  All holders of Claims and Interests are encouraged to carefully review this Disclosure Statement and the Plan.

## VOTING INSTRUCTIONS

### Who May Vote

Only the Holders of Claims and Interests that are deemed "allowed" under the Bankruptcy Code and that are "impaired" under the terms and provisions of the Plan (the "**Voting Classes**") are permitted to vote to accept or reject the Plan.  For purposes of the Plan, only the holders of Allowed Claims in the Voting Classes are impaired under the Plan and thus may vote to accept or reject the Plan.  Under the Plan, the Claims and Interests classified in Classes 7 and 8 are Impaired under the Plan and are entitled to vote to accept or reject the Plan and thus constitute the "Voting Classes" thereunder.

### How to Vote

Each holder of a Claim in a Voting Class should read this Disclosure Statement, together with the Plan and other exhibits, in their entirety.  After carefully reviewing the Plan and this Disclosure Statement and their respective exhibits, please complete the enclosed Ballot, including indicating your vote thereon with respect to the Plan, and return the Ballot as provided below.  Please note that your vote and election cannot count unless you return the enclosed Ballot.

4876-0861-7380, v. 4

If you are a member of a Voting Class and did not receive a Ballot, if your Ballot is damaged or lost, or if you have any questions concerning voting procedures, please contact Susan Jeffcoat at (813) 229-0144 or by electronic transmission at sjeffcoat@srbp.com

**YOU SHOULD COMPLETE AND SIGN THE ENCLOSED BALLOT AND RETURN IT AS DESCRIBED BELOW. IN ORDER TO BE COUNTED, BALLOTS MUST BE DULY COMPLETED AND EXECUTED AND RECEIVED BY NO LATER THAN 4:00 P.M. (EDT) ON THE DATE FIXED BY THE BANKRUPTCY COURT IN THE ENCLOSED ORDER APPROVING DISCLOSURE STATEMENT AND FIXING DATES FOR CONFIRMATION (THE "BALLOT DEADLINE").**

Completed Ballots should be sent by regular mail, hand delivery, or overnight delivery, **SO AS TO BE RECEIVED NO LATER THAN THE BALLOT DEADLINE,** to:

Scott A. Stichter, Esquire
Stichter Riedel Blain & Postler, P.A.
110 E. Madison Street, Suite 200
Tampa, Florida 33602

Under limited special circumstances in the sole discretion of the Debtor, and only where a Holder of a Claim obtains the prior written agreement of the above-named counsel for the Debtor, a completed Ballot may be submitted via electronic mail on or before the Ballot Deadline.

**Acceptance of Plan and Vote Required for Class Acceptance**

If you are the Holder of an Allowed Claim or an Allowed Interest in the Voting Classes, your vote on the Plan is extremely important. In order for the Plan to be accepted and thereafter confirmed by the Bankruptcy Court without resorting to the "cramdown" provisions of § 1129(b) of the Bankruptcy Code as to other classes of Allowed Claims, votes representing at least two-thirds in amount and more than one-half in number of Allowed Claims of each impaired Class of Claims that are voted must be cast for the acceptance of the Plan. The Debtor is soliciting acceptances only from members of the Voting Classes. The Debtor or its agents may contact you with regard to your vote on the Plan.

8

To meet the requirement for confirmation of the Plan under the "cramdown" provisions of the Bankruptcy Code with respect to any impaired Class of Claims or Interests which votes to reject the Plan (a "**Rejecting Class**"), the Debtor would have to show that all Classes junior to the Rejecting Class will not receive or retain any property under the Plan on account of such Claim or Interest unless all holders of Claims in the Rejecting Class receive, under the Plan, property having a value equal to the full amount of their Allowed Claims or Allowed Interests. The Debtor is a non-profit entity and would be subject to different requirements in order to invoke the "cramdown" provisions of the Bankruptcy Code. For a more complete description of the implementation of the "Cramdown" provisions of the Bankruptcy Code pursuant to the Plan, see "VOTING ON AND CONFIRMATION OF THE PLAN CONFIRMATION Without Acceptance by All Impaired Classes."

**Confirmation Hearing**

The Bankruptcy Court will schedule a hearing to consider confirmation of the Plan (the "**Confirmation Hearing**"), which may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing. The Bankruptcy Court has directed that any objection to Confirmation of the Plan must be in writing and specify in detail the name and address of the objector, the basis for the objection and the specific grounds for the objection, and the amount of the Claim held by the objector. Consistent with Rule 3020(b) of the Bankruptcy Rules and Local Rule 3020-1(a), any such objection must be filed with the Bankruptcy Court and served upon each of the following parties, so as to be actually received on or before the deadline set by the Court:

| | |
|---|---|
| Debtor: | Scott A. Stichter, Esquire |
| | Jodi D. Dubose, Esquire |
| | Stichter Riedel Blain & Postler, P.A. |
| | 110 East Madison Street, Suite 200 |
| | Tampa, Florida 33602 |
| | |
| U.S. Trustee: | Conor J. McLaughlin, Esquire |
| | Trial Attorney |
| | Office of the United States Trustee |
| | 110 E. Park Avenue, Suite 128 |
| | Tallahassee, Florida 32301-7728 |

4876-0861-7380, v. 4

**HISTORY AND BUSINESS OF THE DEBTOR PRIOR TO THE CHAPTER 11 FILING; EVENTS LEADING TO THE CHAPTER 11 FILING**

**History and Business of the Debtor Prior to the Chapter 11 Filing**

The Debtor is a non-profit, skilled nursing facility (the "**Facility**"), which is sponsored by the Florida State Primitive Baptist Convention (the "**Florida State Convention**"). The Debtor provides 24-hour skilled nursing care to individuals in Leon County and the Big Bend community who are disabled, aged and in need of skilled nursing services. Since December 6, 2022, the Debtor has been managed by Innovative Health Care Management Services, Inc. ("**Innovative Health**"), which has a proven track record of excellence in management, high regulatory compliance, exceptional quality of care and a proven ability to navigate skilled nursing facilities through difficult times.

The Facility was established in 1968. The Facility has 120 beds and is currently staffed by approximately 125 dedicated employees. The Facility was formed to serve as a refuge for African Americans who could not be admitted to other nursing homes at the time. Today, the Facility services every ethnicity, providing care to those who are in need regardless of race, creed, color, national origin or disability. The Debtor is committed to providing safe and quality services to its residents, while providing an atmosphere that fosters dignity and self-respect. It is the desire of the Facility to meet the spiritual, emotional, and physical needs of those we serve.

Founded on "Good Samaritan" principles, the Debtor offers careful supervision of the individuals entrusted to its care. Residents are provided quality care through a highly skilled team of qualified professionals. This team is led by a Facility Administrator, Medical Director and the Director of Nursing. Registered Nurses, Licensed Practical Nurses and Certified Nursing Assistants are at the Facility 24 hours per day to attend to the individual resident's needs. Social services, activities, dietary, environmental services, maintenance, physical therapy, occupational therapy, and speech therapy are also provided to supplement care requirements.

The Debtor's problems began with the COVID 19 pandemic, which caused the Facility to lose not only its resident population but created employee retention issues. A number of the residents passed away, and many of the employees stopped working in the nursing home sector due to concerns regarding the pandemic. The census of the 120-bed Facility dropped to around 53 residents. The census decline resulted in losses

10

for the Facility.  According to the audited financials for the years ended 2020 and 2021, the Facility had losses of $674,105 and $1,079,385 respectively.

Even with the funds received under the Paycheck Protection Program loan program, the Facility continued to experience significant operating losses. In addition to the lower revenues due to declining census, the Facility encountered significant increases in its labor costs as it was forced to rely on staffing companies to have enough people to operate the Facility.  Even though the State of Florida relaxed standards for obtaining additional staffing through the Patient Care Attendant Program ("PCA"), the Debtor's prior management team was not savvy enough to effectively manage the program. The prior management team could not find instructors to teach the PCA program, which would have prepared noncertified individuals to become Certified Nursing Assistants, nor did they have enough existing staff to transition to work under the program.

In addition to increased costs due to the use of staffing companies, previous management was unable to navigate the complicated nursing home business through trying times. Instead of employing an experienced management team, the Facility was run by a Nursing Home Administrator without any support mechanisms. With one small exception, the Facility did not enter any contracts with insurance companies, which limited the revenue sources to the Medicaid Program and the Medicare Program.  Without diverse revenue sources, prior management could not generate increases in revenues.

### SIGNIFICANT EVENTS IN THE BANKRUPTCY CASE

On October 12, 2023, Miracle Hill filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code, which were designated as Case No. 23-bk-40398-KKS.  The Debtor remains in possession of its properties and continue to manage its assets as debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. Set forth below is a brief summary of significant matters or events which have occurred to date in the Bankruptcy Case.  The description of such matters or events is qualified in its entirety by the actual pleadings filed in the Bankruptcy Case and, to the extent of any inconsistencies between the descriptions in this Disclosure Statement and such pleadings, the filed pleadings shall control.  All of such pleadings are on file with, and may be obtained from, the Bankruptcy Court.

11

**Retention of Professionals by the Debtor**

The Debtor has retained the law firm of Stichter, Riedel, Blain & Postler, P.A. ("**Stichter, Riedel**") as its general bankruptcy counsel in the Bankruptcy Case.  On December 14, 2023, the Bankruptcy Court entered an order (Doc. No. 135) approving the application by the Debtor to employ Stichter, Riedel as its general bankruptcy counsel in the Bankruptcy Case.  The Debtor sought to employ Gibson Kohl, P.L. as special counsel (Doc. No. 68).  On February 2, 2024, the Bankruptcy Court also approved the retention by the Debtor of Gibson Kohl as special counsel (Doc. No. 159).  The Debtor filed an application to employ Carr, Riggs, and Ingram, LLC (Doc. No. 105) as accountants.  The application initially sought authority to employ the accountant to prepare cost reports, which was granted by Order dated December 20, 2023 (Doc. No. 141).  The Debtor subsequently sought to expand the scope of the accountant's engagement (Doc. No. 148).

**Schedules and Statements of Financial Affairs**

On November 10, 2023, the Debtor filed its Schedules and Statement of Financial Affairs with the Bankruptcy Court (Doc.  No. 74).

**Section 341 Meetings of Creditors**

On October 16, 2023, the United States Trustee convened a meeting of Creditors in the Bankruptcy Case pursuant to § 341 of the Bankruptcy Code.  The meeting was concluded on that date.

**Cash Collateral**

On the Petition Date, KeyBank, the SBA, Synovus, and 1329 asserted a lien against the Debtor's cash collateral.  On October 18, 2023, the Debtor's Emergency Motion for Authority to Use Cash Collateral (Doc. No. 23) was filed with the Bankruptcy Court.  The Court has entered an order on an interim basis authorizing the use of cash collateral (Doc. No. 68).  On December 18, 2023, the Bankruptcy Court entered its final cash collateral order (Doc. No. 137).

**Patient Care Ombudsman**

On October 13, 2023, the Bankruptcy Court entered its Order regarding the Appointment of Patient Care Ombudsman (Doc No. 11). On October 25, 2023, the Debtor's Motion to Excuse the Appointment of Patient Care Ombudsman (Doc. No. 53) was filed with the Bankruptcy Court and the U.S. Trustee filed an objection to the Motion (Doc. No. 84). The Bankruptcy Court conducted a final evidentiary hearing on November 29, 2023 and the Bankruptcy Court entered its Order Granting Debtor's Motion to Excuse the Appointment of a Patient Care Ombudsman (Doc. No. 134) on December 14, 2023.

**Wages**

On October 14, 2023, the Debtor's Emergency Motion for Authorization to Pay Prepetition Wages, Salaries, and Other Employee Benefits (Doc. No. 22) was filed with the Court. On November 2, 2023, the Bankruptcy Court entered its Order Granting Debtor's Emergency Motion for Authorization to Pay Prepetition Wages, Salaries, and Other Employee Benefits (Doc. No. 63).

**Bar Dates**

The Bankruptcy Court issued a Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines. The Notice fixed December 21, 2023, as the bar date to file claims in the Bankruptcy Case and the bar date for the government to file claims in the Bankruptcy Case was fixed as April 9, 2024.

SUMMARY OF PLAN OF REORGANIZATION

**Introduction**

The Debtor believes that the Plan provides the greatest possible recovery to the Debtor's Creditors. The distributions under the Plan will exceed recoveries in a chapter 7 liquidation. The Debtor, therefore, believes that acceptance of the Plan is in the best interest of each and every Class of Claims and Interests and recommends that the Voting Classes vote to accept the Plan.

The summary of the Plan contained herein addresses only certain provisions of the Plan. As a summary, it is qualified in its entirety by reference to the Plan itself. Upon Confirmation and the Effective Date, the Plan shall bind the Debtor, all of the

13

Debtor's Creditors, the Holders of Interests, and other parties in interest except as expressly set forth in the Plan. TO THE EXTENT THAT THE TERMS OF THIS DISCLOSURE STATEMENT VARY OR CONFLICT WITH THE TERMS OF THE PLAN, THE TERMS OF THE PLAN SHALL CONTROL.

A summary of the principal provisions of the Plan is set forth below. This summary is qualified in its entirety by reference to the provisions of the Plan and, to the extent there is any conflict between this summary and the Plan, the language of the Plan will govern. All terms stated in initial capital letters in this summary are defined in the Plan.

Claims and Interests will be treated under the Plan in the manner set forth in Article 5 of the Plan. Except as otherwise specifically provided in the Plan, the treatment of, and the consideration to be received by, Holders of Allowed Claims and Holders of Allowed Interests pursuant to the Plan will be in full and final satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims (of any nature whatsoever) and Allowed Interests.

### TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS, AND INSURED CLAIMS

**Administrative Expenses**. Except as otherwise provided below, each Holder of an Allowed Administrative Expense Claims shall be paid by the Reorganized Debtor in Cash, in full, on or before the latest of (a) the Effective Date, (b) ten (10) days after the date such Administrative Expense Claim becomes an Allowed Non-Professional Administrative Expense Claim, (c) the date such Allowed Administrative Claim is due under the applicable contract terms or course of dealing, and (d) such later date as the Holder of such Allowed Administrative Claim may agree. All Creditors asserting Administrative Expense Claims must file such Administrative Expense Claim with the Bankruptcy Court prior to the applicable Administrative Expense Claim Bar Date. To the extent that any Administrative Claims cannot be paid from the Debtor's revenues, such Allowed Amounts will be paid from the Cash Contribution. All fees and charges assessed against the Estate under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930, for any calendar quarter ending prior to the Effective Date but not yet paid as of the Effective Date shall be paid by the Reorganized Debtor in Cash in full to the United States Trustee on or before the tenth (10th) day after the Effective Date.

14

**Priority Tax Claims**.  Each Holder of an Allowed Priority Tax Claim shall receive regular quarterly installment payments, over a five (5) year period commencing on the Effective Date, of a total value, as of the Effective Date of the Plan, equal to the Allowed amount of such Claim.

**Insured Claims**.  After the Effective Date, and to the extent not previously provided for by an order of the Bankruptcy Court, and notwithstanding Sections 11.3 and 11.4 of the Plan, the automatic stay shall be terminated and the discharge injunction modified so that Holders of any Insured Claim may, to the extent allowed under applicable law, assert such Insured Claim against the Reorganized Debtor (where such applicable Reorganized Debtor is named as a defendant, solely for the purpose of recovery against any insurance company that issued an insurance policy providing coverage for such Insured Claim), subject to the following:

If an Insured Claim is subject to a self-insured-retention whereby insurance coverage of such Insured Claim is in excess of an amount which is the responsibility of the Reorganized Debtor, before the automatic stay shall be terminated and the discharge injunction modified with respect to such Insured Claim, either (a) the Holder of such Insured Claim must file a notice with the Bankruptcy Court that such claimant has forever waived, discharged, and released such Insured Claim with respect to all amounts subject to the self-insured retention, such claimant has agreed not to seek recovery of the amount of the self-insured retention from any insurer or from any other entity, and that his or her proof of claim (if any has been filed) is withdrawn with prejudice, or in the alternative, or (b) the part of the Insured Claim which is not insured must first be allowed as a general Unsecured Claim against the Reorganized Debtor in accordance with this Plan or in accordance with section 3.3.4 of the Plan.  Such non-insured portion of the Insured Claim may only be allowed up to the amount of the self-insured retention.

Upon request by any applicable insurer that provided coverage for any Insured Claim that is in excess of a self-insured-retention, the Reorganized Debtor shall reasonably cooperate, at no out of pocket costs to the Reorganized Debtor, with such insurer, including conferring with a designated representative of the insurer a reasonable time prior to consenting to the allowance of any such Insured Claim, and notifying such representative at the same time the Holder of such Insured Claim is notified, of the initial objection to such Insured Claim and of any subsequent court proceedings with respect to such claim.  Nothing impairs the insurer from objecting to any compromise, which shall be resolved by the Bankruptcy Court.  The Reorganized Debtor shall not be required to seek Bankruptcy Court approval of such settlement.

Nothing in this Plan or any document adopted to implement the Plan shall be deemed to alter, waive or impair the legal, equitable or contractual rights, duties or obligations of any insurer, or of any insured party or of any Holder of an Insured Claim with respect to applicable insurance coverage, or otherwise affect in any way, the claims, defenses, rights or causes of action that any insurer may have under the provisions, terms, conditions, defenses and/or exclusions contained in any applicable insurance policy, it being the intent of this Plan that the rights and duties of insurers shall be determined pursuant to its respective insurance policies and under applicable non-bankruptcy law.  For the avoidance of doubt, nothing in this Plan shall eliminate or impair any exclusion or precondition to coverage found in any policy of insurance.

Consistent with Section 3.3.3 of the Plan, nothing in this Plan shall bar or delay, nor shall this Plan enhance, any pre-existing right of any Holder of an Insured Claim to pursue an action directly against an applicable insurer (where such applicable Insurer(s) may be named as defendant(s)), but only to the extent and only under the circumstances where such direct action is authorized and permitted by applicable law.

Any applicable insurance carrier is hereby authorized at any time to reach agreement with the Holder of any Insured Claim to settle such claim at no cost to the Reorganized Debtor, and the Reorganized Debtor's Estate, and all insureds shall be deemed to have consented to such settlement and no approval of the Debtor or the Bankruptcy Court shall be required.  In the absence of any agreement, the Holder of the Insured Claim shall be entitled to prosecute its Insured Claim and the Reorganized Debtor and other parties retain all defenses to such Insured Claim.  The applicable insurance carrier is further authorized at any reasonable time prior to final distribution under this Plan, upon the consent of the Liquidation Trustee, to propose an agreement with the Holder of any Insured Claim to settle such claim where such proposal shall include a general Unsecured Claim up to the amount of the self-insured-retention, all insureds under the applicable policy shall be deemed to have consented to such settlement and no approval of the Bankruptcy Court shall be required.

## TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

Claims and Interests shall be treated under the Plan in the manner set forth in Article 5.  Except as otherwise specifically provided in the Plan, the treatment of, and the consideration to be received by, Holders of Allowed Claims and Holders of Allowed Interests pursuant to the Plan shall be in full and final satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims

16

(of any nature whatsoever) and Allowed Interests. Estimated Distributions to Classes of Creditors under the Plan are set forth in the waterfall summary included in Exhibit B to the Disclosure Statement; Creditors are cautioned that the waterfall summary is simply an estimate of the payments that will need to be made on and after the Effective Date, and is not binding on the Debtor; nor does it provide any rights not otherwise conveyed by the Plan

**Unclassified Claims**. Holders of Allowed Administrative Expense Claims, Allowed Insured Claims, and Allowed Priority Tax Claims shall receive the treatment set forth in Article 3 of the Plan.

**Class 1**: **Priority Claims.** Class 1 consists of all Allowed Priority Claims. Each Holder of an Allowed Priority Claim in Class 1 shall receive payments of Cash from the Reorganized Debtor in the full amount of such Allowed Priority Claim, (a) ten (10) days after the date such Claim becomes an Allowed Claim, or (b) such later date as the Holder of such Allowed Priority Claim may agree. Class 1 is Unimpaired and is not entitled to vote to accept or reject the Plan.

**Class 2: Secured Tax Claims**. Class 2 consists of all Allowed Secured Tax Claims. Each Holder of an Allowed Secured Tax Claims shall be paid in equal monthly installments over five (5) years from the Effective Date together with interest at the rate of Prime plus two percent (2%). Allowed Secured Tax Claims shall retain any Liens securing such Allowed Secured Tax Claim. Class 2 is Impaired and is entitled to vote to accept or reject the Plan.

**Class 3: Secured Claims of KeyBank**. Class 3 consists of all Secured Claims of KeyBank. The Plan shall leave unaltered the legal, equitable, and contractual rights under the KeyBank Mortgage and KeyBank Note. As of the Effective Date, the Debtor shall cure any defaults under the KeyBank Mortgage and KeyBank Note and shall compensate KeyBank for any losses. The maturity and other terms under the KeyBank Note and KeyBank Mortgage shall be reinstated. KeyBank shall continue to receive payments pursuant to the KeyBank Note and shall retain the liens granted pursuant to the KeyBank Mortgage. Class 3 is Unimpaired and is not entitled to vote to accept or reject the Plan.

**Class 4: SBA Secured Claims**. Class 4 consists of all Secured Claims of the SBA. The Plan shall leave unaltered the legal, equitable, and contractual rights under the SBA Mortgage and SBA Note. As of the Effective Date, the Debtor shall cure any defaults under the SBA Mortgage and SBA Note and shall compensate SBA for any

17

losses. The maturity and other terms under the SBA Note and SBA Mortgage shall be reinstated. The SBA shall continue to receive payments pursuant to the SBA Note and shall retain Liens granted pursuant to the SBA Security Agreement. Class 4 is Unimpaired and is not entitled to vote to accept or reject the Plan.

**Class 5:  Synovus Secured Claim.** Class 5 consists of all Secured Claims of Synovus. To the extent the Synovus Secured Claim is an Allowed Secured Claim, Synovus' Allowed Secured Claim shall be paid from the Cash Contribution. To the extent that the Synovus Secured Claim is a Disallowed Secured Claim, the Synovus Claim shall be reclassified as an Unsecured Claim. Any amount that Synovus would be entitled to receive as a Holder of an Allowed Unsecured Claim, the amount of such Distribution will be paid from the Cash Contribution. Class 5 is Unimpaired and is not entitled to vote to accept or reject the Plan.

**Class 6:  Secured Claim of 1329 Abraham.** Class 6 consists of the Secured Claim of 1329 Abraham. To the extent the 1329 Abraham Secured Claim is an Allowed Secured Claim, 1329 Abraham's Allowed Secured Claim shall be paid from the Cash Contribution. To the extent that the 1329 Abraham Secured Claim is a Disallowed Secured Claim, the 1329 Abraham Claim shall be reclassified as an Unsecured Claim. Any amount that 1329 Abraham would be entitled to receive as a Holder of an Allowed Unsecured Claim, the amount of such Distribution will be paid from the Cash Contribution. Class 6 is Unimpaired and is not entitled to vote to accept or reject the Plan.

**Class 7:  AHCA**. Class 7 consists of all Claims of AHCA. AHCA shall be paid from recoveries on the ERC Claim. Any recoveries received under the ERC Claim shall be applied to pay all amounts owed to AHCA. Class 7 is Impaired and is entitled to vote to accept or reject the Plan.

**Class 8:  Unsecured Claims**. Class 8 consists of all Allowed Unsecured Claims against the Debtor. Each Holder of an Allowed Unsecured Claim in Class 8 shall receive its Pro Rata Share of Distributions of Excess Cash on each Distribution Date. Holders of Allowed Unsecured Clams shall also receive any remaining funds from the ERC Claim after the Class 7 Claim has been paid in full. The initial Distribution pursuant to this subparagraph shall be made by the Distribution Agent as soon as practicable after the later of (a) occurrence of all events, including the Allowance of all applicable Claims, necessary to calculate the amount available for Distribution pursuant to this subparagraph, and (b) the date the Distribution Agent determines, in the exercise of its discretion, that sufficient amounts of Class 8 Claims

18

have become Allowed Claims to warrant an initial Distribution on account of Class 8 Claims. The Distribution Agent may make subsequent Distributions pursuant to this subparagraph at such times and in such amounts as the Distribution Agent shall determine, in the exercise of its discretion, that such Distributions are appropriate. Class 8 is Impaired by the Plan. Each Holder of an Allowed Unsecured Claim in Class 8 is entitled to vote to accept or reject the Plan.

**Class 9: Interests**. Class 9 consists of all Interests in the Debtor. The Holders of Interests in the Debtor shall retain their Interests, which shall not be affected by the Plan. Holders of Interests in the Debtor shall not be entitled to any Distributions until Holders of Allowed Unsecured Claims have received all payments provided for under the Plan. Class 9 is Impaired by the Plan. The Holders of the Class 9 Interests are entitled to vote to accept or reject the Plan.

## ACCEPTANCE OR REJECTION OF THE PLAN

***Each Impaired Class Entitled to Vote Separately***. Except as otherwise provided in Article 6.3, the Holders of Claims or Interests in each Impaired Class of Claims or Interests shall be entitled to vote separately to accept or reject the Plan.

***Acceptance by Impaired Classes***. Only a Holder of an Allowed Claim in an Impaired Class is entitled to vote to accept or reject the Plan. Pursuant to § 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if (a) the Holders (other than any Holder designated pursuant to § 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated pursuant to § 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. If a Holder of an Allowed Claim holds more than one Allowed Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Allowed Claim for purposes of determining the number of Allowed Claims in such Class voting on the Plan.

***Presumed Acceptance of Plan by Unimpaired Classes***. Pursuant to § 1126(f) of the Bankruptcy Code, any Unimpaired Class and the Holders of Claims in such Classes are conclusively presumed to have accepted the Plan and, thus, are not entitled to vote on the Plan. Accordingly, votes of Holders of Claims in such Classes are not being solicited by the Debtor. Except as otherwise expressly provided in the Plan,

19

nothing contained herein or otherwise shall affect the rights and legal and equitable claims or defenses of the Debtor or the Reorganized Debtor in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

*Impairment Controversies*.  If a controversy arises as to whether any Claim or any Class of Claims is Impaired under the Plan, such Claim or Class shall be treated as specified in the Plan unless the Bankruptcy Court shall determine such controversy upon motion of the party challenging the characterization of a particular Claim or a particular Class of Claims under the Plan.

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

*Rejection of Executory Contracts and Unexpired Leases.*  Except as set forth on Schedule of Assumed Contracts and Leases to be filed as part of the Plan Supplement (the "**Assumed Contracts and Leases**"), all executory contracts and unexpired leases that currently exist between the Debtor and any other Person or Entity that have not been rejected by the Debtor with the Bankruptcy Court's approval on or prior to the Effective Date shall be deemed rejected by the Debtor as of the Confirmation Date (collectively, the "**Rejected Contracts**"); provided, however, the Debtor reserves the right, on or prior to the Confirmation Date, to assume any executory contract or unexpired lease by providing notice of such assumption to the party to the executory contracts and unexpired leases affected thereby.  For each of the Assumed Contracts and Leases, the Debtor asserts that no cure amount is due, and the Confirmation Order shall accordingly provide that no cure payment is due from the Debtor.  If any counterparty to one of the Assumed Leases timely objects to the Plan and asserts that a cure payment is due, the Debtor will seek to resolve any such claim, but if such efforts are unsuccessful, will ask the Bankruptcy Court to resolve on or before the date of the Confirmation Hearing..

*Inclusiveness*.  Unless otherwise specified, each executory contract and unexpired lease that is rejected or assumed shall include all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is specifically referenced in this Plan or in a notice of assumption provided under this Plan.

***Claims Arising From Rejected Executory Contracts and Unexpired Leases***. Unless otherwise ordered by the Bankruptcy Court, any Claim for damages arising by reason of the rejection of any executory contract or unexpired lease must be filed with the Bankruptcy Court on or before the Bar Date for rejection damage Claims in respect of such rejected executory contract or unexpired lease or such Claim shall be forever barred and unenforceable against the Debtor and the Reorganized Debtor. With respect to the Rejected Contracts, the Bar Date for filing rejection damage and other Claims with the Bankruptcy Court shall be (a) any deadline ordered by the Bankruptcy Court, or (b) in the absence of any such order, the Voting Deadline. The Plan and any other order of the Bankruptcy Court providing for the rejection of an executory contract or unexpired lease shall constitute adequate and sufficient notice to Persons or Entities which may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the Bar Date for filing a Claim in connection therewith. All Claims for damages from the rejection of an executory contract or unexpired lease, once fixed and liquidated by the Bankruptcy Court and determined to be Allowed Claims, shall be Allowed Unsecured Claims. Any such Claims that become Disputed Claims shall be Disputed Claims for purposes of administration of Distributions under the Plan to Holders of Allowed Unsecured Claims. Unless otherwise ordered by the Bankruptcy Court, any Claim for damages arising by reason of the rejection of any executory contract or unexpired lease must be filed with the Bankruptcy Court on or before the Bar Date for rejection damage Claims in respect of such rejected executory contract or unexpired lease or such Claim shall be forever barred and unenforceable against the Debtor and the Reorganized Debtor. With respect to the Rejected Contracts, the Bar Date for filing rejection damage and other Claims with the Bankruptcy Court shall be (a) any deadline ordered by the Bankruptcy Court or (b) in the absence of any such order, the Voting Deadline. The Plan and any other order of the Bankruptcy Court providing for the rejection of an executory contract or unexpired lease shall constitute adequate and sufficient notice to Persons or Entities which may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the Bar Date for filing a Claim in connection therewith.

All Claims for damages from the rejection of an executory contract or unexpired lease, once fixed and liquidated by the Bankruptcy Court and determined to be Allowed Claims, shall be Allowed Unsecured Claims in the applicable Bankruptcy Case. Any such Claims that become Disputed Claims shall be Disputed Claims for purposes of administration of Distributions under the Plan to Holders of Allowed Unsecured Claims in the applicable Bankruptcy Case.

## MEANS OF IMPLEMENTATION AND EXECUTION OF PLAN

***General Overview of the Plan***.  On the Effective Date, the Debtor will cure arrearages to KeyBank and the SBA and reinstate obligations owed to KeyBank and the SBA.  The Debtor shall have raised the Cash Contribution from donors to pay certain Administrative Expense Claims and obligations owed to 1329 Abraham and Synovus under the Plan.  The Reorganized Debtor will pay Allowed Unsecured Claims over time.  The Debtor is involved in preliminary discussion regarding a possible bond offering and reserves the right to amend the Plan to pay Creditors from proceeds of a bond offering.

***Effective Date Transactions***.  The Debtor shall carry out its other Effective Date responsibilities under the Plan, including the execution and delivery of all documentation contemplated by the Plan.  On the Effective Date, the current board shall continue to operate the Debtor.

***Corporate Existence***.  The Debtor will continue to exist after the Effective Date as corporations, with all of the powers of a not for profit corporation under applicable law in the State of Florida and pursuant to its articles of organization and bylaws or other organizational documents in effect prior to the Effective Date without prejudice to any right to terminate such existence (whether by merger, dissolution or otherwise) under applicable law after the Effective Date.

***Management of the Reorganized Debtor Following the Effective Date***.  On and after the Effective Date, the Debtor's operations shall be the responsibility of the Reorganized Debtor, as set forth in the Disclosure Statement.

***Corporate Action***.  All matters provided for under the Plan involving the corporate structure of the Debtor, or any corporate action to be taken by or required of the Debtor, shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the directors of the Debtor.

***Section 1146 Exemption***.  Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any security or the making, delivery or recording of any instrument of transfer pursuant to, in implementation of or as contemplated by the Plan, or the vesting, re-vesting, transfer or sale of any Assets of, by or in the Debtor, its Estate, or the real estate pursuant to, in implementation of or as

contemplated by the Plan, or any transaction arising out of, contemplated by or in any way related to the foregoing shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, sales tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

*Waiver of Avoidance Actions and Preservation of Causes of Action*. On the Effective Date, all Causes of Action (other than Avoidance Actions) shall be vested exclusively in the Reorganized Debtor, except to the extent a Creditor or other third party has, prior to the Effective Date, been specifically released from any Cause of Action by the terms of the Plan or by a Final Order of the Bankruptcy Court. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor may hold against any Person or Entity, including the insurers under any of the Debtor's insurance policies.

No Creditor or other Person should vote for the Plan or otherwise rely on the Confirmation of the Plan or the entry of the Confirmation Order in order to obtain, or on the belief that it will obtain, any defense to any Cause of Action, except as expressly provided in the Plan. No Creditor or other party should act or refrain from acting on the belief that it will obtain any defense to any Cause of Action, except as expressly provided in the Plan. ADDITIONALLY, EXCEPT AS EXPRESSLY PROVIDED FOR IN THE PLAN, THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSES OF ACTION OR OBJECTIONS TO CLAIMS, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF THE REORGANIZED DEBTOR. Creditors are advised that legal rights, claims and rights of action the Debtor may have against it, if they exist, are retained under the Plan for prosecution unless a specific order of the Bankruptcy Court authorizes the Debtor to release such claims or such claims are expressly released or limited pursuant to this Plan. As such, Creditors are cautioned not to rely on (i) the absence of the listing of any legal right, claim or right of action against a particular Creditor in the Disclosure Statement, the Plan, or the Schedules or (ii) the absence of litigation or demand prior to the date of the Confirmation Hearing of the Plan as any indication that the Debtor or the Reorganized Debtor do not possess or do not intend to prosecute a particular claim or cause of action if a particular Creditor votes to accept the Plan. It is the expressed intention of the Plan to preserve rights, Claims, and rights of action of

23

the Debtor, whether now known or unknown, for the benefit of the Reorganized Debtor and the Debtor's Creditors, as applicable, except as expressly stated in this Plan. A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan or the Disclosure Statement; nor shall the Debtor, as applicable, as a result of such failure be estopped or precluded under any theory from pursuing such Cause of Action. Nothing in the Plan operates as a release of any of the Causes of Action, except as expressly provided otherwise.

The Debtor does not presently know the full extent of the Causes of Action and, for purposes of voting on the Plan, all Creditors are advised that the Reorganized Debtor will have substantially the same rights that the Debtor would have with respect to the Causes of Action, except as expressly provided in this Plan. Accordingly, neither a vote to accept the Plan by any Creditor nor the entry of the Confirmation Order will act as a release, waiver, bar or estoppel of any Cause of Action against such Creditor or any other Person or Entity, unless such Creditor, Person or Entity, except as provided in the Plan, in the Confirmation Order, or in any other Final Order of the Bankruptcy Court or the Plan otherwise waives or limits such Cause of Action. Confirmation of the Plan and entry of the Confirmation Order is not intended to and shall not be deemed to have any res judicata or collateral estoppel or other preclusive effect which would precede, preclude, or inhibit prosecution of such Causes of Action following Confirmation of the Plan, except as expressly provided for in the Plan.

***Effectuating Documents; Further Transactions.*** Following the Effective Date, the Reorganized Debtor shall be authorized to, and shall, execute, deliver, file, or record such contracts, instruments, releases, mortgages, and other agreements or documents, and take such actions as may be necessary or appropriate, to effectuate and further evidence the terms and conditions of the Plan or to otherwise comply with applicable law.

## PROVISIONS GOVERNING DISTRIBUTION

***Distributions.*** Except as otherwise expressly provided herein, the Reorganized Debtor as Distribution Agent shall assume sole responsibility and liability for any allowed but unpaid Claims.

***Determination of Claims***. From and after the Effective Date, the Reorganized Debtor shall have the exclusive authority to, and shall, file, settle, compromise, withdraw, or litigate to judgment all objections to Claims. Except as to any late-filed

Claims and Claims resulting from the rejection of executory contracts or unexpired leases, if any, all objections to Claims shall be filed on or before the applicable Claims Objection Deadline, and the Confirmation Order shall contain appropriate language to that effect. Holders of Unsecured Claims that have not filed Claims on or before the Bar Date shall serve the Notice Parties with any request to the Bankruptcy Court for allowance to file late Unsecured Claims.  If the Bankruptcy Court grants the request to file a late Unsecured Claim, such Unsecured Claim shall be treated in all respects as an Unsecured Claim in the applicable Bankruptcy Case.  Insured Claims that are not satisfied in full by proceeds of applicable insurance policies shall be allowed or disallowed in accordance with this section 9.2. Holders of Insured Claims shall be authorized to seek withdrawal of the reference from the district court if necessary to liquidate or estimate any personal injury tort or wrongful death Claim pursuant to 28 U.S.C. § 157(b)(2)(5) or any similar law or rule that limits the Bankruptcy Court's jurisdiction to adjudicate such Claims.  Objections to late-filed Claims shall be filed on the latest of (a) the Claims Objection Deadline for Unsecured Claims; (b) ninety (90) days following the Effective Date; (c) the date that is sixty (60) days after the Reorganized Debtor receive actual notice of the filing of such Claim; or (d) the date that is sixty (60) days after the Reorganized Debtor receives actual notice that an Insured Claim has not been satisfied in full by proceeds of applicable insurance policies.  Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Debtor or the Reorganized Debtor, as applicable, effect service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the extent counsel for the Holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto; or (c) by first class mail, postage prepaid, on any counsel that has filed a notice of appearance in the Bankruptcy Case on behalf of the Holder of a Claim. Disputed Claims shall be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B) unless the Bankruptcy Court orders otherwise.  If the fixing or liquidation of a contingent or unliquidated Claim would cause undue delay in the administration of the Bankruptcy Case, such Claim shall be estimated by the Bankruptcy Court for purposes of allowance and Distribution.  The Debtor or the Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to § 502(c) of the Bankruptcy Code regardless of whether the Debtor or the Reorganized Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the

25

pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, such estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor or the Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate allowance of such Claim. The determination of Claims in Estimation Hearings shall be binding for purposes of establishing the maximum amount of the Claim for purposes of allowance and Distribution. All of the aforementioned Claim objection, estimation and resolution procedures are cumulative and not exclusive of one another. Procedures for specific Estimation Hearings, including provisions for discovery, shall be set by the Bankruptcy Court giving due consideration to applicable Bankruptcy Rules and the need for prompt determination of the Disputed Claim.

*Unclaimed Distributions.* If the Holder of an Allowed Claim fails to negotiate a check for a Distribution issued to such Holder within sixty (60) days of the date such check was issued, then the Reorganized Debtor shall provide written notice to such Holder stating that, unless such Holder negotiates such check within thirty (30) days of the date of such notice, the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further Distributions under the Plan in respect of such Claim. If a check for a Distribution made pursuant to the Plan to any Holder of an Allowed Claim is returned to the Reorganized Debtor due to an incorrect or incomplete address for the Holder of such Allowed Claim, and no claim is made in writing to the Reorganized as to such check within sixty (60) days of the date such Distribution was made, then the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further Distributions under the Plan in respect of such Claim.

*Transfer of Claim.* In the event that the Holder of any Claim shall transfer such Claim on and after the Effective Date, such Holder shall immediately advise the Reorganized Debtor in writing of such transfer and provide sufficient written evidence of such transfer. The Reorganized Debtor shall be entitled to assume that no transfer of any Claim has been made by any Holder on or after the Effective Date unless and until the Reorganized Debtor shall have received written notice to the contrary. Each transferee of any Claim shall take such Claim subject to the provisions of the Plan and

26

to any request made, waiver or consent given or other action taken hereunder and, except as otherwise expressly provided in any notice of transfer, the Reorganized Debtor shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers of the transferor under the Plan.

*One Distribution per Holder*.  If the Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of Distributions hereunder, and only one Distribution shall be made with respect to the single aggregated Claim.

*Effect of Pre-Confirmation Distributions.*  Nothing in the Plan shall be deemed to entitle the Holder of a Claim that received, prior to the Effective Date, full or partial payment of such Holder's Claim, by way of settlement or otherwise, pursuant to an order of the Bankruptcy Court, provision of the Bankruptcy Code, or other means, to receive a duplicate payment in full or in part pursuant to the Plan; and all such full or partial payments shall be deemed to be payments made under the Plan for purposes of satisfying the obligations of the Debtor to such Holder hereunder if such full or partial payment was made by the Debtor that would otherwise be required to make a Distribution hereunder. Further, nothing herein shall require any Debtor to make a Distribution which, when added to payments received from other sources on account of the applicable Claim, would result in the Holder of the applicable Claim receiving more than the Allowed Amount of such Claim.

*No Interest on Claims*.  Except as expressly stated in the Plan or otherwise Allowed by a Final Order of the Bankruptcy Court, no Holder of an Allowed Claim shall be entitled to the accrual or payment of Postpetition interest, penalties, or late charges on account of such Allowed Claim for any purpose.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a Distribution is made when and if such Disputed Claim becomes an Allowed Claim.

*Compliance with Tax Requirements.*  In connection with the Plan, the Debtor and the Reorganized Debtor shall comply with all tax withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities, and all Distributions hereunder shall be subject to such withholding and reporting requirements. Notwithstanding the above, each Holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental

Unit, including income, withholding, and other tax obligations, on account of such Distribution.

## DISCHARGE, RELEASE, LIMITATION OF LIABILITY, AND GENERAL INJUNCTION

***Revesting of Property of the Estate in the Reorganized Debtor.*** On the Effective Date, except as otherwise expressly provided in the Plan, all Property of the Miracle Hill Estate shall revest in the Reorganized Debtor free and clear of any and all Liens, Debts, obligations, Claims, Liabilities, Interests, and all other interests of every kind and nature, and the Confirmation Order shall so provide.

***Discharge of Claims.*** Except as otherwise expressly provided in the Plan or in the Confirmation Order, the Confirmation Order shall operate as a discharge, pursuant to § 1141(d) of the Bankruptcy Code, to the fullest extent permitted by applicable law, as of the Effective Date, of the Debtor and the Reorganized Debtor from any and all Debts of and Claims of any nature whatsoever against the Debtor that arose at any time prior to the Effective Date, including any and all Claims for principal and interest, whether accrued before, on or after the Petition Date. Except as otherwise expressly provided in the Plan or in the Confirmation Order, but without limiting the generality of the foregoing, on the Effective Date, the Debtor and the Reorganized Debtor, and its successors or assigns, shall be discharged from any Claim or Debt that arose prior to the date of the Confirmation Hearing and from any and all Debts of the kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based on such Debt was filed pursuant to § 501 of the Bankruptcy Code, (b) a Claim based on such Debt is an Allowed Claim pursuant to § 502 of the Bankruptcy Code, or (c) the Holder of a Claim based on such Debt has voted to accept the Plan. As of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons and Entities, including all Holders of a Claim, shall be forever precluded and permanently enjoined to the fullest extent permitted by applicable law from asserting directly or indirectly against the Debtor or the Reorganized Debtor, or any of its respective successors and assigns, or the Assets or Properties of any of them, any other or further Claims, Debts, rights, causes of action, remedies, or Liabilities based upon any act, omission, document, instrument, transaction, event, or other activity of any kind or nature that occurred prior to the Effective Date or that occurs in connection with implementation of the Plan, and the Confirmation Order shall contain appropriate injunctive language to that effect. In accordance with the foregoing, except as otherwise expressly provided in the Plan or

28

in the Confirmation Order, the Confirmation Order shall be a judicial determination of the discharge or termination of all such Claims and other Debts and Liabilities against the Debtor, pursuant to §§ 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtor, at any time, to the extent that such judgment relates to a discharged or terminated Claim, Liability, or Debt. Notwithstanding the foregoing, the Reorganized Debtor shall remain obligated to make payments to Holders of Allowed Claims as required pursuant to the Plan.

*Exculpation from Liability*.  **The Debtor and its agents, Postpetition directors and officers, and the Professionals for the Debtor (acting in such capacity) (collectively, the "Exculpated Parties") shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, or confirmation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or the Bankruptcy Case, in the case for the period on and after the Petition Date and through the Effective Date; provided, however, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party or breach of any contract or any fiduciary duty.  With respect to Professionals, the foregoing exculpation from liability provision shall also include claims of professional negligence arising from the services provided by such Professionals during the Bankruptcy Case.  The rights granted under this Article 11.2 are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Exculpated Parties have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law.  In furtherance of the foregoing, the Exculpated Parties shall have the fullest protection afforded under § 1125(e) of the Bankruptcy Code and all applicable law from liability for violation of any applicable law, rule or regulation governing the solicitation of acceptance or rejection of a plan.  This exculpation from liability provision is an integral part of the Plan and is essential to its implementation.**

*General Injunction*.  **Pursuant to §§ 105, 1123, 1129 and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all**

29

**Persons or Entities that have held, currently hold or may hold a Claim, Debt, or Liability that is treated pursuant to the terms of the Plan are and shall be permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such Claims, Debts, or Liabilities, other than actions brought to enforce any rights or obligations under the Plan:  (a) commencing or continuing in any manner any action or other proceeding against the Debtor or the Reorganized Debtor, (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, the Reorganized Debtor, its Assets, or its Estate; (c) creating, perfecting or enforcing any Lien or encumbrance against Debtor, the Reorganized Debtor, or its Assets (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor or the Reorganized Debtor, (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; or (f) interfering with or in any manner whatsoever disturbing the rights and remedies of the Debtor, the Reorganized Debtor, or the Estate under the Plan and the documents executed in connection therewith.  The Debtor or the Reorganized Debtor have the right to independently seek enforcement of this general injunction provision.  This general injunction provision is an integral part of the Plan and is essential to its implementation.**

*Term of Certain Injunctions and Automatic Stay.*  All injunctions or automatic stays provided for in the Bankruptcy Case pursuant to §§ 105, 362 or other applicable provisions of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect following the Confirmation Date and until the Final Decree Date, unless otherwise ordered by the Bankruptcy Court.  With respect to all lawsuits pending in courts in any jurisdiction (other than the Bankruptcy Court) in which any  Debtor was listed as a defendant and that seek to establish such Debtor's liability on Prepetition Claims asserted therein and that are stayed pursuant to §  362 of the Bankruptcy Code, such lawsuits shall be deemed dismissed as of the Effective Date, unless the Reorganized Debtor affirmatively elects to have such Debtor's liability established by such other courts, and any pending motions seeking relief from the automatic stay for purposes of continuing any such lawsuits in such other courts shall be deemed denied as of the Effective Date, and the automatic stay shall continue in effect, unless the Reorganized Debtor affirmatively elects to have the automatic stay lifted and to have such Debtor's liability established by such other courts; and the Prepetition Claims at issue in such lawsuits shall be determined and either allowed or disallowed in whole or part by the Bankruptcy Court

30

pursuant to the applicable provisions of the Plan, unless otherwise elected by the Reorganized Debtor, as applicable, as provided herein.  To be clear, any lawsuits pending in courts in any jurisdiction in which the Debtor or the Reorganized Debtor is a plaintiff or seek to establish a claim against another Person are not subject to this Article shall not be deemed dismissed and are Causes of Actions being vested in the Reorganized Debtor, subject to the limitations stated in this Plan.

   ***No Liability for Tax Claims.***  Unless a taxing Governmental Unit has asserted a Claim against the Debtor before the Governmental Unit Bar Date or Administrative Expense Claim Bar Date established therefor, no Claim of such Governmental Unit shall be allowed against the Debtor or the Reorganized Debtor, as applicable, or its officers, directors, or agents for taxes, penalties, interest, additions to tax or other charges arising out of (i) the failure, if any, of the Debtor, or any other Person or Entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or for any prior year or period or (ii) an audit of any return for a period before the Petition Date.

## MISCELLANEOUS PROVISIONS

   ***Retention of Jurisdiction.***  The Plan provides for the retention of jurisdiction by the Bankruptcy Court following the Effective Date to, among other things, determine all disputes relating to Claims, Interests, and other issues presented by or arising under the Plan.  The Bankruptcy Court will also retain jurisdiction under the Plan for any actions brought in connection with the implementation and consummation of the Plan and the transactions contemplated thereby.  See Article 12 of the Plan for a more detailed description.

   ***Confirmation Order and Plan Control.***  To the extent the Confirmation Order or the Plan is inconsistent with the Disclosure Statement or any agreement (other than the Allocation Agreement) entered into between the Debtor and any third party, unless otherwise expressly provided in the Plan or the Confirmation Order, the Confirmation Order and the Plan (including the incorporated Allocation Agreement) shall control over the Disclosure Statement and any such agreement.  The Confirmation Order (and any other final orders of the Bankruptcy Court) shall be construed together and consistent with the terms of the Plan; provided, however, to the extent the Confirmation Order is inconsistent with the Plan, the Confirmation Order shall control over the Plan.

31

*Closing and Reopening of the Bankruptcy Cases*.  The Reorganized Debtor shall not seek a Final Decree or an order reopening the Bankruptcy Case.

## CERTAIN FEDERAL INCOME TAX CONSEQUENCES

### General

The tax consequences of the Plan to Holders of Claims (the "**Holders**") are discussed below.  This discussion of the federal income tax consequences of the Plan to Holders under U.S. federal income tax law, including the Internal Revenue Code of 1986, as amended (the "**Tax Code**"), is provided for informational purposes only.  While this discussion addresses certain of the material tax consequences of the Plan, it is not a complete discussion of all such consequences and is subject to substantial uncertainties.  Moreover, the consequences to a Holder may be affected by matters not discussed below (including, without limitation, special rules applicable to certain types of persons, such as persons holding non-vested stock or otherwise subject to special rules, nonresident aliens, life insurance companies, and tax-exempt organizations) and by such Holder's particular tax situation.  In addition, this discussion does not address any state, local, or foreign tax considerations that may be applicable to particular Holders.

**HOLDERS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING STATE, LOCAL AND FOREIGN TAX CONSEQUENCES.**

**THE DEBTOR'S BANKRUPTCY COUNSEL HAS NO TAX EXPERTISE AND HAS NOT RESEARCHED OR ANALYZED TAX CONSEQUENCES RESULTING FROM THE PLAN.**

**SOME OF THE ISSUES DISCUSSED BELOW ARE COMPLEX, AND THERE CAN BE NO ASSURANCE OF THE ACCURACY OF THIS INFORMATION.**

### General Federal Income Tax Consequences to Holders

*In General*.  The following discussion addresses certain of the material consequences of the Plan to Holders.  Under the Plan, the tax consequences of the

32

Plan to a Holder will depend, in part, on the type of consideration received in exchange for the Claim and the tax status of the Holder, such as whether the Holder is an individual, corporation or other entity, whether the Holder is a resident of the United States, the accounting method of the Holder, and the tax classification of the Holder's particular Claim. **HOLDERS ARE STRONGLY ADVISED TO CONSULT THEIR OWN TAX ADVISORS WITH RESPECT TO THE TAX TREATMENT UNDER THE PLAN OF THEIR PARTICULAR CLAIM.**

*Tax Consequences to Holders*.  Holders are urged to consult with their tax advisors as to the consequences of the Plan to them.  Among the issues Holders and their advisors may wish to consider are:

(1)    The extent to which a Holder may be entitled to a bad debt deduction or a worthless securities loss.

(2)    The extent to which a Holder may recognize gain or loss on the exchange of its Claim for property, debt, and stock of the Debtor and the character of that gain or loss.

(3)    The basis and the holding period for any property, debt, and stock received by a Holder.

(4)    Whether the original issue discount rules, market discount rule, and amortizable bond premium rules apply to any debt received by a Holder.

(5)    The treatment of property, stock, or debt, if any, received by a Holder in satisfaction of accrued interest.

(6)    The effect of a Holder receiving deferred distributions or distributions that are contingent in amount.

PERSONS CONCERNED WITH THE TAX CONSEQUENCES OF THE PLAN SHOULD CONSULT THEIR OWN ACCOUNTANTS, ATTORNEYS AND/OR ADVISORS.  THE DEBTOR MAKES THE ABOVE-NOTED DISCLOSURE OF POSSIBLE TAX CONSEQUENCES FOR THE SOLE PURPOSE OF ALERTING READERS TO TAX ISSUES THEY MAY WISH TO CONSIDER. THE DEBTOR CANNOT AND DOES NOT REPRESENT THAT THE TAX CONSEQUENCES MENTIONED ABOVE ARE COMPLETELY ACCURATE BECAUSE, AMONG

4876-0861-7380, v. 4

OTHER THINGS, THE TAX LAW EMBODIES MANY COMPLICATED RULES THAT MAKE IT DIFFICULT TO STATE ACCURATELY WHAT THE TAX IMPLICATIONS OF ANY ACTION MIGHT BE.

### *Certain Federal Income Tax Consequences to the Debtor*

*Cancellation of Indebtedness Income.*  Generally, cancellation of indebtedness triggers ordinary income to a debtor equal to the adjusted issue price (as determined for federal income tax purposes) of the indebtedness cancelled.  If debt is discharged in a Chapter 11 case, however, a debtor does not recognize cancellation of indebtedness income.  Instead, certain tax attributes otherwise available to the debtor are reduced by the amount of the indebtedness cancelled.  Tax attributes subject to reduction include: (i) net operating losses (NOL) and NOL carryforwards; (ii) most credit carryforwards; (iii) capital losses and carryforwards; (iv) the tax basis of the debtor's depreciable and non-depreciable assets; (v) passive activity loss and credit carryovers; and (vi) foreign tax credit carryforwards.

Under Sections 108(b) and 1017 of the Tax Code, attributes are reduced in the following order: first, net operating loss carryover; second, general business credit carryovers; third, capital loss carryovers; and fourth, tax basis.  In lieu of reducing net operating loss and carryovers, the taxpayer can elect to reduce tax basis first.  Such an election shall not apply to an amount greater than the aggregate adjusted bases of depreciable property held by the taxpayer as of the beginning of the taxable year following the taxable year in which the discharge occurs.

Therefore, any cancellation of indebtedness income realized by the Debtor would require a reduction in its NOLs or other tax attributes.

### VOTING ON AND CONFIRMATION OF THE PLAN

### *Confirmation and Acceptance by All Impaired Classes*

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan if all of the requirements of § 1129 of the Bankruptcy Code are met.  Among the requirements for confirmation of a plan are that the Plan be accepted by all impaired classes of claims and equity interests, and satisfaction of the matters described below.

4876-0861-7380, v. 4

*__Feasibility__*.  A plan may be confirmed only if it is not likely to be followed by the liquidation or the need for further financial liquidation of a debtor.  The Debtor believes that it has the ability to perform its obligations under the Plan without further financial liquidation and the Projections attached hereto support this.

The Plan basically provides for payment to Holders of Allowed Claims, including contingent, unliquidated, and Disputed Claims to the extent they become Allowed Claims, in the order of their priority.  Accordingly, the Debtor believes that the Plan is *per se* feasible.

The obligations under the Plan to Holders of contingent, unliquidated, and Disputed Claims cannot be ascertained without the determination of the validity and amount of those Claims by the Bankruptcy Court.  Until the Claim determination process is complete, the exact amount to be received by Unsecured Creditors cannot be ascertained.

*__Best Interests Standard__*.  The Bankruptcy Code requires that the Plan meet the "best interest" test, which requires that members of a Class must receive or retain under the Plan, property having a value not less than the amount which the Class members would have received or retained if the Debtor was liquidated under Chapter 7 on the same date.  The Debtor believes, and the liquidation analysis attached hereto demonstrates, that distributions to all Impaired Classes of Claims in accordance with the terms of the Plan would exceed the net distribution that would otherwise take place in Chapter 7.

*__Confirmation Without Acceptance by All Impaired Classes__*.  If one or more of the Impaired Classes of Claims or Interests does not accept the Plan, the Plan may nevertheless be confirmed and be binding upon the non-accepting Impaired Class under the "cram-down" provisions of the Bankruptcy Code, if the Plan does not "discriminate unfairly" and is "fair and equitable" to the non-accepting Impaired Classes under the Plan.

*__Discriminate Unfairly__*.  The Bankruptcy Code requirement that a plan not "discriminate unfairly" means that a dissenting class must be treated equally with respect to other classes of equal rank.  The Debtor believes that the Plan does not "discriminate unfairly" with respect to any Class of Claims or Interests because no class is afforded treatment which is disproportionate to the treatment afforded other Classes of equal rank.

*__Fair and Equitable Standard__*.  The "fair and equitable" standard, also known as the "absolute priority rule," requires that a dissenting class receive full compensation for its allowed claims or interests before any junior class receives any distribution.  The Debtor believes the Plan is fair and equitable to all Classes pursuant to this standard.

With respect to the Impaired Classes of Secured Claims, Bankruptcy Code § 1129(b)(2)(A) provides that a plan is "fair and equitable" if it provides for any of the treatment set forth in §1129(b)(2)(A)(i)-(iii).  See, § 1129(b(2)(A) (using the term "or").  As to the Holders of Claims in Impaired Classes of Secured Claims, the Debtor believes that the Plan meets these standards.

With respect to the Impaired Classes of Unsecured Claims, Bankruptcy Code § 1129(b)(2)(B) provides that a plan is "fair and equitable" if it provides that (i) each holder of a claim of such a class receives or retains on account of such claim, property of a value as of the effective date of the plan equal to the allowed amount of such claim; or (ii) the Holder of any claim or interest that is junior to the claims of such class will not receive or retain any property under the plan on account of such junior claim or interest, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under § 1115, subject to the requirements of subsection (a)(14) of this Section.  Senior Care is a non-profit entity and the "fair and equitable" standards may be applied differently as to non-profit entities.

## Absolute Priority Rule

The Bankruptcy Code and other applicable law establish the priority for distribution of funds in bankruptcy cases.  These priority provisions are sometimes referred to as the "absolute priority" rule.  Normally, and subject to exceptions not relevant here, valid secured claims are first paid to the extent of the amount of the claim or the value of the claimant's collateral (if less than the claim).

Any property in the Estate, net of the valid secured claims described above, is first distributed to holders of priority claims, including (a) the costs of administering the cases; (b) certain wage and benefit claims; and (c) certain tax claims.  After payment of priority claims, unsecured creditors share pro rata in the remaining funds until paid in full.  Equity holders (i.e., stockholders) are paid only after all creditors have been paid.

36

The Debtor intends to evaluate the results of the balloting and determine whether to seek Confirmation of the Plan in the event that less than all the Impaired Classes of Claims do not vote to accept the Plan. The determination as to whether to seek Confirmation under such circumstances will be announced before or at the Confirmation Hearing.

The Debtor is a non-profit entity. As such, the Debtor contends that the Absolute Priority Rule is inapplicable to non-profit entities.

### *Non-Confirmation of the Plan*

If the Plan is not confirmed by the Bankruptcy Court, the Bankruptcy Court may permit the filing of an amended plan, dismiss the case, or convert the case to Chapter 7. In a Chapter 7 case, the Debtor's assets would be sold and distributed to the Unsecured Creditors after the payment of all Secured Claims, costs of administration, and the payment of priority claims.

The cost of distributing the Plan and this Disclosure Statement, as well as the costs, if any, of soliciting acceptances, will be borne by the Estate.

### ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

If the Plan is not confirmed, the potential alternatives include (a) alternative plans under Chapter 11 (including a liquidation plan), (b) dismissal of the cases, or (c) conversion of the cases to cases under Chapter 7 of the Bankruptcy Code.

### *Alternative Plans of Liquidation*

If the Plan is not confirmed, the Debtor could attempt to formulate and propose a different plan or plans. The Debtor believes that the Plan will enable Creditors to be paid the maximum amount possible for their Allowed Claims.

### *Liquidation under Chapter 7 or Chapter 11*

If a plan is not confirmed, the Bankruptcy Case may be converted to a Chapter 7 liquidation case. In a Chapter 7 case, a trustee would be appointed to liquidate the assets of the Debtor. Converting the case to Chapter 7 would simply add an additional layer of administrative expenses to the Estate which would eliminate any funds

37

available for distribution to Unsecured Creditors. The proceeds of the liquidation would be distributed to the Creditors of the Debtor in accordance with the priorities established by the Bankruptcy Code.

In general, the Debtor believes that liquidation under Chapter 7 would result in diminution of the value of the interests of the Creditors because of (a) additional administrative expenses involved in the appointment of a trustee and attorneys, accountants, and other professionals to assist such trustee; (b) additional expenses and claims, some of which might be entitled to priority, which would arise by reason of the liquidation; (c) the loss of the going concern sale of the Facilities to TL Capital and related Allocation Agreement and resulting failure to realize the full value of the Debtor's assets; (d) the inability to utilize the work-product and knowledge of the Debtor and its Professionals; (e) the substantial delay which would elapse before Creditors would receive any distribution in respect of their Claims; and (f) the loss to Unsecured Creditors.

As discussed above in connection with the "Best Interests of Creditors Test", the Debtor believes that the Plan is superior to liquidation under Chapter 7 or Chapter 11.

### SUMMARY, RECOMMENDATION AND CONCLUSION

The Debtor believes that the Plan is in the best interests of all Creditors. In the event of a liquidation of the Debtor's assets under Chapter 7 of the Bankruptcy Code, the Debtor believes there would be little or no distribution to Unsecured Creditors. For these reasons, the Debtor urges that the Plan is in the best interests of all Creditors and that the Plan be accepted.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

4876-0861-7380, v. 4

Tampa, Florida
Dated as of February 9, 2024

MIRACLE HILL NURSING AND
REHABILITATION CENTER, INC.

By: _____

Its: _____

Date: _____

/s/ Scott A. Stichter
Scott A. Stichter (FBN 0710679)
Jodi Daniel Dubose (FBN 52651)
Stichter, Riedel, Blain & Postler, P.A.
110 East Madison Street, Suite 200
Tampa, Florida  33602
(813) 229-0144 – Phone (813) 229-1811 – Fax
sstichter@srbp.com
jdubose@srbp.com
Attorneys for Debtor

39